MORGAN SERVICES, INC.,
Plaintiff-Appellee,

v.

LOCAL 323, CHICAGO AND CENTRAL STATES JOINT BOARD, AMALGAMATED CLOTHING AND TEXTILE WORKERS UNION, AFL–CIO, Defendant-Appellant.

No. 82–3728.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 9, 1983.

Decided Jan. 11, 1984.

As Amended Feb. 15, 1984.

Larry D. Farley (argued), Joseph J. Allotta, Allotta, Singer & Farley Co., L.P.A., Toledo, Ohio, for defendant-appellant.

Lawrence D. Ehrlich, Thomas Canafax, Jr. (argued), Borovsky, Ehrlich & Kronenberg, Chicago, Ill., Charles S. Wittenberg, Toledo, Ohio, for plaintiff-appellee.

Before ENGEL and CONTIE, Circuit Judges, and GIBSON, Senior Circuit Judge.[*]

CONTIE, Circuit Judge.

Appellee Morgan Services, Inc., brought this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to vacate an arbitration award ordering the reinstatement of an employee who had been discharged for insubordination. The district court entered judgment for Morgan Services on the ground that the arbitrator had exceeded his authority by improperly modifying the Company's sanction for the employee's misconduct. The defendant, Local 323, Chicago and Central States Joint Board, Amalgamated Clothing and Textile Workers Union, AFL–CIO, appeals. This court has jurisdiction under 29 U.S.C. § 185 and 28 U.S.C. § 1291. We affirm.

I.

Morgan Services provides linens and other laundered items to businesses in the Toledo, Ohio area. It employs drivers to service its customers along established routes. The drivers' principal duties are delivering clean linen, picking up soiled linen for laundering, maintaining an inventory of the linen on each customer's premises, and soliciting new customers. Prior to 1980, the inventories were effected by simply counting the number of soiled items picked up from each customer. When the company needed more detailed inventories, supervisory personnel usually performed them.

Early in 1980, Morgan Services decided that it was necessary to conduct more detailed inventories on a regular basis. To implement this new policy, the Company directed its drivers to conduct a detailed inventory on three customers each day.[1] This new, more detailed inventory involved counting the number of linens delivered, those picked up, and those remaining on the customer's premises.

One of the drivers, Clyde Childress, was dissatisfied with this new arrangement. A supervisor testified that on several occasions he had to prod Childress into completing the required inventories.[2] By May of 1980, Childress had almost completely stopped performing inventories. As of May 21, he had completed only one inventory for the entire month.

Matters came to a head during a meeting between the drivers and their supervisor on the morning of May 21, 1980. At this meeting, the supervisor reminded the drivers, as he had previously, of the need to complete three inventories a day. The supervisor stated that if he did not receive the inventories he would take "necessary actions." Childress responded that it was not the drivers' responsibility to take the inventories and that, since they had inventoried all their customers once, there was no need for further inventories. The supervisor told Childress that if believed drivers should not

---

[*] The Honorable Floyd R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

[1] Each of the four drivers had approximately 120 customers on his route. Of these, 30 to 40 would be serviced by a driver on a particular day.

[2] The supervisor testified that he had to remind Childress of the necessity of completing his inventories and that, after being reminded, Childress would complete inventories "for a couple of days," but would soon cease to submit the inventories.

be doing this type of work, he should file a grievance to resolve the problem.

When Childress returned to the Company premises after completing his deliveries on that day, the supervisor confronted Childress and asked him why he had not taken any inventories on the preceding day, May 20. The supervisor testified that Childress reiterated his earlier position that detailed inventories were not his job. After the supervisor threatened to "write up" Childress if he did not submit the required inventories, Childress, according to the supervisor, once more stated that inventories were not his responsibility. Childress testified that, when asked why he had not done any inventories on May 20, he had merely stated: "I'm not going to take it any more." Childress' supervisor then discussed the problem with the Company's general manager. It was decided that Childress would be suspended.

Within a few days representatives of the Company and the Union met with Childress to discuss the situation. Childress again stated that inventories were not his job and that, in any event, since each customer had been subjected to one detailed inventory, he thought it unnecessary to continue the process. Morgan Services learned at this meeting that Childress had completed three inventories on May 21. Despite this, the Company concluded after the meeting that Childress would be discharged for insubordination because of his repeated statements that he would not perform inventories. Childress then filed a grievance over his discharge. The matter was later submitted to arbitration pursuant to Article X of the collective bargaining agreement.

Article XIII, § 1 of the collective bargaining agreement contained a general "Management Rights" clause which provided that "[e]xcept as specifically provided to the contrary in this Agreement," Morgan Services is "vested exclusively" with the power to, *inter alia,* "discharge employees for cause . . . to determine the amount and quality of the work needed; by whom within the bargaining unit such work is to be performed . . . and be responsible for the assignments of duties." This section also empowered the Company to "adopt reasonable shop rules." The Union had an opportunity under this provision to grieve and arbitrate the content of the shop rules.[3]

Article IX of the agreement provided that "[n]o employee shall be dismissed without just cause," and that "[a]ny employee may be discharged without regress [sic] if proven guilty of . . . insubordination."[4] In addition, a shop rule promulgated under the Management Rights clause provided that "an employee will be subject to immediate

---

**3.** The full text of Article XIII, § 1 read as follows:

MANAGEMENT RIGHTS

Except as specifically provided to the contrary in this Agreement, the Management of the Company's business and the direction of its workforce is vested exclusively in the Company including (but not limited to) the right of the Company to direct and supervise the work of its employees to hire, promote, transfer, layoff, demote, suspend, discipline or discharge employees for cause (all of which shall be subject to the term of this Agreement); to plan, direct and control its operations; to determine the amount and quality of the work needed; by whom within the bargaining unit such work is to be performed; to introduce new and improved methods or facilities; to schedule hours of work and be responsible for the assignments of duties. The Company may also adopt reasonable shop rules, provided, however, that prior to their being put into effect, the Union shall be served a copy of such proposed work

rules. The Union may protest their reasonableness through the grievance and arbitration provisions of this Agreement.

**4.** The full text of Article IX read as follows:

DISCHARGE

No employee shall be dismissed without just cause. If an employee is dismissed and he feels that he has been unjustly dealt with, he must file his complaint within five (5) working days of the dismissal. If it is found upon due investigation that such employee has been unjustly dismissed he shall be restored to employment and shall be paid for all time lost at this usual rate of compensation. An employee may be discharged without regress [sic] if proven guilty of theft, drunkenness, drinking intoxicants while on duty, the use of hallucinatory drugs or insubordination.

The arbitrator found that "regress" was a typographical error and that "redress" was intended. This is surely correct.

discharge" for "[i]nsubordination, including refusal to obey reasonable orders of any supervisor during work time."

The arbitrator found the facts to be those stated above. He interpreted Article IX of the collective bargaining agreement, however, as allowing him to modify the Company's sanction for insubordination. To the Company's argument that the phrase "[a]ny employee may be discharged without redress if proven guilty of . . . insubordination" unambiguously prohibited the arbitrator from reducing the sanction for insubordination, the arbitrator responded cryptically that this "reading of the language would require the addition of conditions which do not now appear in the agreement." The arbitrator found that "it is impossible to glean the meaning . . . intended" by the phrase "without redress." He concluded that because there was no "clear and express contract statement of the intent of the parties in adopting the words in question, an arbitrator should not impart to them a meaning which significantly varies from customary arbitral procedures." The arbitrator, apparently applying customary arbitral procedures," then ordered reinstatement because Childress had worked for Morgan Services for 31 years, because he had a relatively satisfactory work record,[5] and because "discipline should be progressively applied as a corrective measure." His award reads as follows:

> The grievance is granted in part and denied in part.
>
> Discharge was too severe a penalty for grievant's misconduct. It hereby is set aside and held for naught, and a disciplinary suspension is substituted therefor. Grievant forthwith shall be reinstated with full seniority but without back pay or benefits.

The district court recognized its narrow standard of review, but nonetheless found that the award conflicted with the terms of the agreement. Specifically, the district

court held that the provision allowing the Company to discharge an employee "without redress" unambiguously vested Morgan Services with the sole discretion in determining the proper sanction for insubordination. The arbitrator, according to the district court, therefore exceeded his contractual powers in modifying the sanction imposed by the Company. We conclude that the district court correctly vacated the award.

## II.

The standard of review of an arbitrator's decision is, of course, very narrow. *General Telephone Co. of Ohio v. Communications Workers of America*, 648 F.2d 452, 456 (6th Cir.1981). Since the parties have "bargained for the arbitrator's decision, not the court's," *Anaconda Co. v. District Lodge No. 27 of the International Association of Machinists*, 693 F.2d 35, 37 (6th Cir.1982) (per curiam), courts are limited to determining whether an award "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Thus, although the "refusal of courts to review the merits of an arbitration award is the proper approach," *id.* at 596, 80 S.Ct. at 1360, we must examine the award to determine if it is fundamentally at odds with the collective bargaining agreement because arbitrators do not have the "authority to disregard or modify plain and unambiguous provisions" of the agreement. *Detroit Coil Co. v. International Association of Machinists, Lodge # 82*, 594 F.2d 575, 579 (6th Cir.1979), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979).

## III.

As a threshold matter, the Union argues that the provision in Article IX dealing with insubordination is not controlling because the arbitrator did not find that Chil-

---

5. The only incidents of misconduct on Childress' work record occurred in 1979. In that year, the Company discharged him for a refusal to solicit new customers. The discharge was reduced to a three-day suspension following the submission of a grievance. Childress also received a written reprimand in 1979 for poor work performance.

dress' actions amounted to insubordination. The Union asserts in its brief that "[n]owhere in the arbitrator's award opinion does he specifically find that Mr. Childress was guilty of insubordination." Brief of Appellant at 23. The Union argues that the arbitrator instead found only "contractual misconduct." Were the Union's contention correct, then our analysis would have to proceed on a different basis.[6]

Although the arbitrator did not use the exact words, "Childress was guilty of insubordination," to argue that he did not find insubordination and did not clearly state that finding in his opinion exalts the arbitrator's form of expression over his clearly intended meaning. This is what the arbitrator said about insubordination: "Although the Union argues grievant's conduct and actions which resulted in his ... discharge on May 28 *did not constitute insubordination, the facts clearly support an opposite finding.*" (Emphasis added). There can be only one "finding" which is the "opposite" of the Union's argument to the arbitrator that Childress' acts "did *not* constitute insubordination": Childress *did* commit acts constituting insubordination. We decline the Union's invitation to parse the arbitrator's opinion so finely that its meaning is made to seem the opposite of what was obviously intended. The arbitrator clearly found that Childress' actions constituted insubordination.[7]

## IV.

Since the arbitrator found that Childress did commit insubordination but nonetheless

6. If the Union is correct, then the question is not whether the Company had the unfettered power to discharge for insubordination under the "without redress" clause, but whether the discharge was appropriate, considering all the circumstances, under the "just cause" provision. *See supra* note 4.

7. The arbitrator also stated that Childress had made an "actual refusal ... to perform required work" and that "management was fully justified in accepting his statement as a refusal of a work directive."

The Union argues that Childress had a good faith belief that, because he had inventoried all his customers once, he had fully discharged his

modified the Company's sanction, the question then becomes one of the relative powers of the Company and the arbitrator under the collective bargaining agreement. The Company successfully argued before the district court that the provisions of Article IX addressing the power to discharge for insubordination unambiguously vested sole discretion with the Company to determine whether a discharge for Childress' insubordination was appropriate. The Union argues that the arbitrator correctly found this provision to be ambiguous and construed the ambiguity to permit arbitral review of the Company's decision to discharge Childress for insubordination. The district court was without authority, the Union argues, to reinterpret the agreement after the arbitrator found it ambiguous. Thus, the central issue is whether determining the appropriate sanction for insubordination is a function delegated solely to the Company or whether it is a matter initially for the Company but subject to review and modification by the arbitrator.

The resolution of this case turns on whether the phrase "without redress" is ambiguous. It is well established that the power to construe ambiguous contract provisions lies with the arbitrator, see, e.g., *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960) (a court "should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement"); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358,

assigned duties. Since the arbitrator found insubordination and this finding is amply supported by the record, we respond to this contention only in passing. First, Childress' claimed misconception was corrected by his supervisor during the May 21 meeting. Childress twice stated his intention not to perform inventories *after* this meeting. Second, the arbitrator found that Childress had inventoried "only about one-half" of his customers, contrary to Childress' assertion. The arbitrator found that this discrepancy made Childress' assertion of a good faith belief that he had fully performed his duties unworthy of credence.

1362, 4 L.Ed.2d 1424 (1960) ("the question of interpretation of the collective bargaining agreement is a question for the arbitrator"); *Timken Co. v. United Steelworkers of America,* 492 F.2d 1178, 1180 (6th Cir. 1974) ("[i]f a collective bargaining agreement is unclear and ambiguous in its terms, its construction should normally be determined by the arbitrator"), and that an arbitrator may reduce an employer's sanction for proven misconduct when the agreement can be fairly interpreted to give the arbitrator that power, *see, e.g., Anaconda Co. v. District Lodge No. 27 of the International Association of Machinists,* 693 F.2d 35, 37 (6th Cir.1982) (per curiam); *Fabricut, Inc. v. Tulsa General Drivers, Warehousemen and Helpers, Local 523,* 597 F.2d 227, 229–30 (10th Cir.1979); *Falls Stamping & Welding Co. v. UAW,* 575 F.2d 1191, 1192 (6th Cir. 1978) (per curiam); *Timken Co.,* 492 F.2d at 1180. It is equally well established, however, that an arbitrator cannot ignore plain and unambiguous language in the collective bargaining agreement, *see, e.g., Sears, Roebuck & Co. v. Teamsters Local Union No. 243,* 683 F.2d 154, 155–56 (6th Cir.1982) (per curiam), *cert. denied,* —— U.S. ——, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983); *Detroit Coil Co. v. International Association of Machinists, Lodge # 82,* 594 F.2d 575, 579 (6th Cir.1979), *cert. denied,* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979), and that an arbitrator may not modify an employer's sanction for employee misconduct when a collective bargaining agreement clearly vests the power to determine appropriate measures with the employer, *see, e.g., International Brotherhood of Firemen and Oilers, Local No. 935–B v. Nestle Co., Inc.,* 630 F.2d 474, 477 (6th Cir.1980); *Mistletoe Express Service v. Motor Expressmen's Union,* 566 F.2d 692, 695 (10th Cir.1977); *Amanda Bent Bolt Co. v. UAW,* 451 F.2d 1277, 1280 (6th Cir.1971); *Local 342, UAW v. T.R.W., Inc.,* 402 F.2d 727, 730–31 (6th Cir.1968), *cert. denied,* 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223 (1969). Thus, if the agreement is ambiguous, the arbitrator could construe it as allowing him to modify a sanction for insubordination; if there is any basis for that construction in the agreement, we lack authority to alter the arbitrator's determination. On the other hand, if the agreement unambiguously allocated the power to discharge for insubordination solely to the Company, then the arbitrator was without power to modify the Company's sanction.[8]

■ Upon reviewing the record and the arguments of the parties, we find that the district court was correct in concluding that

**8.** The Union states in its brief that "[o]nce Arbitrator Walt found an ambiguity in the language of the collective bargaining agreement, the District Court could not reverse his decision simply because its interpretation of the ambiguity differs from that of the arbitrator." Brief of Appellant at 15. Implicit in this argument is the erroneous notion that if an arbitrator finds a provision to be ambiguous, his decision construing that provision is absolutely immune from judicial review. This argument also misconceives the thrust of the district court's analysis. It did not vacate the arbitrator's award "simply because its interpretation of the ambiguity differs" from the arbitrator's. Rather, it reversed the arbitrator's decision because it found the agreement to be unambiguous.

Insofar as the Union argues that the construction of ambiguities in collective bargaining agreements is a task for arbitrators and not for courts, it is correct. But insofar as it argues that the threshold determination that a given provision is ambiguous is *exclusively* a question for the arbitrator, it errs. If the Union's position were accepted, then the rule that arbitrators cannot ignore or modify unambiguous contract provisions would be wholly nugatory: an arbitrator could easily circumvent this rule by making a finding that a provision is ambiguous when in fact it is not. The initial question of whether an ambiguity exists is amenable to judicial review to the same extent and in the same manner as other decisions of arbitrators. That is, the determination that an ambiguity exists will be reviewed to determine whether this decision draws its essence from the agreement. *See Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361. This is to be contrasted to the situation in which an arbitrator adopts one of several possible conflicting constructions of an unclear provision in a collective bargaining agreement. In the latter situation, courts will rarely, if ever, substitute their own judgment for that of the arbitrator. *See generally Retail Clerks Union Local No. 1557 v. Murfreesboro Vending Service, Inc.,* 689 F.2d 623, 626 (6th Cir.1982) (per curiam) (courts should not be concerned with whether an arbitrator has given an agreement the "best" interpretation; rather, the inquiry is ended if the arbitrator has provided a "permissible" interpretation).

the agreement's statement that "[a]ny employee may be discharged without redress if proven guilty of . . . insubordination" is unambiguous. This case is therefore governed by those authorities which hold that an arbitrator is without authority to disregard or modify plain and unambiguous language in the collective bargaining agreement. *See Sears, Roebuck and Co.,* 683 F.2d 154; *Timken Co.,* 482 F.2d 1012; *Amanda Bent Bolt Co.,* 451 F.2d 1277; *T.R.W., Inc.,* 402 F.2d 727. As we said in *Sears, Roebuck and Co.,* the "clause before us simply cannot be characterized as 'ambiguous' or subject to conflicting interpretations." *Sears, Roebuck and Co.,* 683 F.2d at 156. We rely on several factors in reaching this conclusion.

First, we note that a "collective bargaining agreement is after all a contract," *Timken Co. v. Local Union No. 1123, United Steelworkers of America,* 482 F.2d 1012, 1015 (6th Cir.1973) and courts should "interpret the words in a contract of this nature to give them their ordinary and reasonable meaning," *Penn Packing Co., Inc., v. Amalgamated Meat Cutters and Butcher Workmen, Local 195,* 497 F.2d 888, 891 (3rd Cir. 1974) (footnote omitted). The words "without redress" as they appear in the provision in question have an ordinary meaning that is manifest without any need for construction: once it is determined that an employee has engaged in insubordination, the employer's decision to discharge the employee is not open to review by the arbitrator.[9]

Second, it is highly significant that in attempting to demonstrate the ambiguity of the provision on insubordination, the arbitrator was unable to hypothesize a construction that would empower him to modify the employer's determination of an appropriate sanction for insubordination. The arbitrator postulated three possible meanings which could be given to the phrase "without redress." First, it could mean that an employee could not even grieve a discharge for insubordination. Second, this language could mean "that a discharge always is warranted for certain stated infractions." Third, it could mean that "once the penalty was determined by the Company, it could not be modified or reduced by an arbitrator." Under *any* of these constructions, the net effect is that the Company is granted the power to determine the appropriate sanction for insubordination and that this determination is not subject to arbitral review.[10] Despite his inability to construe the phrase "without redress" in such a way as to enable him to review the Company's decision to discharge Childress, the arbitrator concluded that he had authority to review and modify this determination. In such a circumstance, it cannot be said that the arbitrator's award draws its essence from the collective bargaining agreement.

Since the agreement contained an express and unambiguous reservation on the arbitrator's powers, the arbitrator could not base his award on "customary arbitral procedures" that conflict with the agreement. We recognize that an arbitrator "may of course look for guidance from many sources," *Enterprise Wheel & Car*

**9.** The Union also urges that the district court erred in relying on *Nestle Co.,* 630 F.2d 474, because the collective bargaining agreement in *Nestle* provided that insubordination "shall constitute cause for dismissal" of an employee but that the collective bargaining agreement in the present case provides only that an "employee *may* be discharged" for insubordination. *See Nestle Co.,* 630 F.2d at 475. Although the *Nestle* court did note a distinction between the words may and shall, *see id.* at 476, this difference is not conclusive as to the question before us. In *Amanda Bent Bolt Co.,* 451 F.2d 1277, the collective bargaining agreement also provided that the employer "may" discharge an employee for certain acts, *see id.* at 1279, but this did not preclude a construction of the agreement which forbade arbitral review of the discharge decision. The only effect of the word "may" is to indicate that the sanction of discharge is within the employer's discretion. *Cf. Mistletoe Express Service,* 566 F.2d at 695 ("We find no ambiguity in the use of 'may' rather than 'will.' The provision gives the employer the option to discharge or not.").

**10.** We also find it relevant that the only difference between the second and third meanings proposed by the arbitrator is in their formulation. Thus, the arbitrator found only two possible constructions, both of which supported the Company's position.

*Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361, including "the industrial common law—the practice of the industry and the shop," *Warrior & Gulf Navigation Co.,* 363 U.S. at 581–82, 80 S.Ct. at 1352, but when the collective bargaining agreement answers the question submitted to the arbitrator in clear and unambiguous language, the arbitrator errs if he looks beyond the contract and uses extraneous considerations to render the contract's clear language ineffective. A provision in a collective bargaining agreement cannot be treated as ambiguous and then ignored simply because it varies from the arbitrator's expectations. Collective bargaining agreements, like all contracts, are a species of private law. These agreements are made in "an effort to erect a system of industrial self-government." *Id.* at 580, 80 S.Ct. at 1351. The parties to such agreements are free to establish procedures which are different from those of other parties. The parties in this case evidently chose to adopt procedures which vary from what is, in the arbitrator's opinion, "customary." In substituting his view of what the parties should have agreed to for what the parties actually did agree to, the arbitrator was dispensing "his own brand of industrial justice." *See Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361.

In conclusion, the collective bargaining agreement clearly and unambiguously vested the power to determine the appropriate sanction for insubordination solely with the Company. The arbitrator exceeded his contractual powers by reviewing this decision and the district court correctly vacated the award. The judgment of the district court is therefore AFFIRMED.