**SAN MARINO CEMENT WALLS, INC., Plaintiff,**

v.

**LABORERS' LOCAL UNIONS 334 AND 1076, Defendants.**

**Civ. No. 86–1660.**

United States District Court, E.D. Michigan, S.D.

Dec. 22, 1986.

Douglass A. Witters, Clark, Hardy, Lewis, Pollard & Page, P.C., Birmingham, Mich., for plaintiff.

Sheldon H. Meizlish, Detroit, Mich., for defendants.

**CORRECTED
MEMORANDUM OPINION**

RALPH M. FREEMAN, District Judge.

This is an action to vacate an arbitration award, brought pursuant to 29 U.S.C. § 185. Plaintiff, San Marino Cement Walls, Inc. (San Marino), is in the business of constructing poured concrete wall foundations for residential buildings (Transcript of Arbitration Proceedings [hereinafter "Transcript"], p. 66). In 1982, San Marino became a signatory to the collective bargaining agreement executed by the Laborers' Local Unions 334 and 1076 (Union) and the Poured Concrete Wall Association, Inc. (Association) (Transcript, p. 67).[1] San Marino was not a member of the Association, although it employed members of the union (Transcript, p. 66).

In early 1984, George Rastelli, vice president of San Marino, was advised that certified public accountants would be conducting a routine audit of San Marino's books and records, pursuant to the fringe benefit provisions of the collective bargaining agreement (Transcript, p. 68). The purpose of the audit was to determine whether San Marino had been complying with its obli-

---

1. Relevant portions of the parties' collective bargaining agreement are appended to this opinion as "Appendix A."

gation to make contributions to the union's various fringe benefit funds [2] (Transcript, pp. 12, 13, 68). The audit was finalized in May 1984, at which time San Marino was notified that it owed an additional $80,-676.48 to the funds for the period 1980 through 1983 based on its failure to comply with the "contracting out" provisions of the collective bargaining agreement [3] (Transcript, pp. 13–17). San Marino disputed the applicability of the contracting out provisions and, accordingly, refused to pay the audit indebtedness [4] (Transcript, p. 70).

Because of San Marino's refusal to pay the audit indebtedness, the union filed unfair labor practice charges with the National Labor Relations Board (Board) on June 1, 1984. In accordance with its decision in *Collyer Insulated Wire,* 192 NLRB 837 (1971), the Board declined to hear the unfair labor practice charge and deferred to arbitration as provided for in the collective bargaining agreement [5] (NLRB's Deferral Letter, dated July 31, 1984, Defendants' Brief, Exhibit E). The union filed its grievance with the Labor Relationship Committee (LRC) on November 19, 1984.[6]

A hearing with respect to the grievance was held before the LRC on October 30, 1985. In its opening statement before the LRC, San Marino objected to the LRC considering the merits of the grievance on the ground that the union had failed to file its grievance within the time period provided in the collective bargaining agreement [7] (Transcript, pp. 4–5). San Marino, nevertheless, participated in the arbitration hearing without waiving its objection to the arbitrability of the grievance (Transcript, pp. 4, 6).

The LRC issued its award on February 25, 1986. In its written decision, the LRC rejected San Marino's objection to the arbitrability of the grievance on essentially three grounds. First, the LRC concluded that San Marino had waived its right to object by agreeing to defer the Unions' unfair labor practice charges to arbitration. Second, the LRC concluded that San Marino was estopped from asserting the untimeliness of the grievance as a defense because San Marino had concealed or misrepresented the status of those employees on whose behalf the fringe benefit contributions in question were payable. Finally, the LRC concluded that the relevant time limitations applied only to grievances involving Association members and not to grievances involving non-Association signatories (Award of the Labor Relationship Committee [hereinafter "Award"], pp. 6–7).[8] With respect to the merits of the grievance, the LRC found in favor of the

---

2. Under the collective bargaining agreement, San Marino was required to make fringe benefit contributions to the following funds: Laborers' Pension Trust Fund—Detroit and Vicinity; Laborers' Vacation and Holiday Trust Fund—Detroit and Vicinity; and Poured Concrete Workers' Insurance Fund. *See* 1982–1984 Agreement between Laborers' Locals 334 and 1076 and Poured Concrete Wall Ass'n, Inc. [hereinafter cited as "1982–1984 Agreement"], Arts. IV & V, *infra,* Appendix A. The funds were not made parties to the instant lawsuit, although they are the beneficiaries of the arbitration award. Rather than intervening in the present case, the funds elected to file a separate lawsuit against San Marino, *Laborers' Pension Trust Fund—Detroit and Vicinity, et. al. v. San Marino Cement Walls, Inc.,* Civil No. 86–2057, in order to protect their interest in the arbitration award.

3. *See* 1982–1984 Agreement, Art. XIV, *infra,* Appendix A.

4. The parties disagree with respect to San Marino's motive for refusing to pay the alleged indebtedness. The Union contends that San Marino refused to pay because it believed that the contracting out provision was not being applied equally to all contractors. San Marino contends that it refused to pay because it believed that the contracting out provisions were inapplicable. The Court need not resolve this factual dispute in order to dispose of this motion.

5. *See* 1982–1984 Agreement, Art. X, *infra,* Appendix A.

6. Under Article X of the 1982–1984 Agreement, grievances are referred to a committee, known as the Labor Relationship Committee, which is comprised of three representatives designated by the Union and three representatives designated by the Association.

7. *See* 1982–1984 Agreement, Art. X pt. A, *infra,* Appendix A.

8. Relevant portions of the LRC's award are appended to this opinion as "Appendix B."

Union, albeit for a lesser amount than the audit indebtedness.[9]

On April 22, 1986, San Marino brought this suit to set aside the LRC's award. The Union filed a counterclaim on May 12, 1986 to enforce the LRC's award or, in the alternative, seeking a judgment for the full amount of the audit indebtedness. This matter is presently before the Court on cross-motions: San Marino moves to set aside the award, and the Union moves for confirmation of the award.

San Marino urges the Court to set aside the LRC's award on the ground that the LRC exceeded its authority by finding that the grievance was arbitrable. The Sixth Circuit summarized the principles which this Court must apply in reviewing the LRC's award as follows:

> In the *Steelworkers Trilogy* cases decided in 1960, the Supreme Court clarified the judiciary's role in the specific context of labor arbitration pursuant to collective bargaining agreements. Noting that "arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement," the Court stated that the role played by the judiciary in the context of collectively bargained-for arbitration should be "strictly confined." *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 578, 582 [80 S.Ct. 1347, 1350, 1353, 4 L.Ed.2d 1409] (1960). In *Steelworkers v. Enterprise Corp.*, 363 U.S. 593 [80 S.Ct. 1358, 4 L.Ed.2d 1424] (1960), the Court discussed the role of labor arbitrators and the power of a federal court to review their awards:
>
> > [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

> .... Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.... [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.
>
> *Id.*, 363 U.S. at 599, 597 [80 S.Ct. at 1362, 1361]; *see also Timken Co. v. Local No. 1123, United Steelworkers of America*, 482 F.2d 1012 (6th Cir.1973). Consequently, an arbitrator's decision is entitled to great deference and generally should be upheld absent irrationality or disregard of plain and unambiguous language in the agreement. *See, e.g., General Telephone Co. of Ohio v. Communications Workers*, 648 F.2d 452, 457 (6th Cir.1981); *Detroit Coil v. International Ass'n of M. & A. Workers*, 594 F.2d 575, 579–81 (6th Cir.), *cert. denied*, 444 U.S. 840 [100 S.Ct. 79, 62 L.Ed.2d 52] (1979).

*National Post Office Mailhandlers, Watchmen, Messengers & Group Leaders Div. v. United States Postal Service*, 751 F.2d 834, 840 (1985).

San Marino first argues that the LRC ignored the plain and unambiguous language of the collective bargaining agreement by finding that non-Association signatories are not entitled to claim the benefit of the time limitations for bringing grievances. In support of this argument, San Marino refers the Court to Articles X and XVI of the 1982–1984 Agreement. Article X provides in relevant part:

> A. Any party to this Agreement alleging a violation hereof shall file a written complaint with the other party hereto setting forth in a signed statement the grounds for complaint and requesting abandonment of the causes thereof.

---

**9.** For reasons not relevant to the disposition of this matter, the LRC determined that San Mari-

no was required to pay $34,945.45 to the funds.

All alleged violations of this agreement must be filed in writing by employees or a representative of the Union(s) with the Association Member within thirty (30) calendar days of the occurrence of the claimed violation. If not so filed, the matter shall not form the basis of a complaint or grievance under this Agreement and such claimed violation shall be waived.

Article XVI of the Agreement provides in relevant part:

Employers, signatory to this Agreement or who are otherwise bound by this Agreement and who are not members of nor represented by the Association, agree to be bound by all the terms and conditions set forth in this Agreement and to become a party to such Agreement.

San Marino argues that when read in conjunction with one another, these two contract provisions unambiguously require *all* grievances to be brought within thirty days regardless of whether the grievance is against an Association member or a non-Association signatory to the collective bargaining agreement. Citing the Sixth Circuit's decision in *Detroit Coil v. International Ass'n of M. & A. Workers,* 594 F.2d 575, *cert. denied,* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979), San Marino further argues that the LRC's award must be set aside.

Alternatively, San Marino argues that the relevant provisions of the collective bargaining agreement are ambiguous with respect to a non-Association signatory's right to rely on the thirty-day limitations period for grievances. San Marino further argues that the LRC's construction of the ambiguous contract language lacks rational support in the record and, therefore, is not entitled to deference from the Court. In support of this argument, San Marino refers the Court to the Sixth Circuit's decision in *Morgan Services, Inc. v. Local 323,* 724 F.2d 1217 (1984).

The Union argues that the LRC's construction of the relevant provisions of the collective bargaining agreement was reasonable and, accordingly, must be upheld by the Court.[10] With respect to the reasonableness of the LRC's interpretation, the Union argues that the first paragraph of Article X, part A applies to grievances generally and, thus, makes no distinction between Association and non-Association signatories. In contrast, the second paragraph of Article X, part A refers only to Association members. The Union argues that the construction urged by San Marino would render the first paragraph of Article X, part A meaningless. The Union further argues that even if the Court disagrees with the LRC's construction of the relevant contract provisions, the Court may not vacate the award unless the construction given is wholly irrational, citing *W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983).

■ The Court is persuaded that it must defer to the LRC's construction of the relevant contract terms. As San Marino concedes, the thirty-day limitation set forth in Article X, part A, on its face, applies only to Association members. The extent to which Article XVI modifies the thirty-day provision of Article X is unclear. The LRC concluded that Article XVI did not impact on the plain language of the thirty-day provision. The Court cannot say that this construction is irrational. Distinctions are drawn between Association members and non-Association signatories throughout the collective bargaining agreement, non-members being referred to as "employers." In addition, the term "contractor" is used to refer to Association members and non-members jointly. *See* 1982–1984 Agreement, *infra,* Appendix A, p. 1. The LRC could reasonably conclude that the distinction in terms between the first and second paragraphs of Article X, part A was intentional, and thus, the thirty-day provision should be given its plain meaning. The Court is not free to vacate the LRC's award merely because it might find another construction more appealing. *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597–99, 80 S.Ct. 1358, 1361–

10. Apparently, the Union assumes that the collective bargaining agreement is ambiguous and, thus, requires interpretation.

62, 4 L.Ed.2d 1424 (1960); *Morgan Services,* 724 F.2d at 1221.

■ Alternatively, the Court concludes that San Marino waived its right to object to the untimeliness of the grievance by agreeing to defer the Union's unfair labor practice charges to arbitration.[11] Relying on the Sixth Circuit's recent decision in *Knollwood Cemetery Ass'n v. United Steelworkers of America,* 789 F.2d 367 (1986), the Union argues that even if the thirty-day limitations period applies to non-Association signatories, San Marino waived its right to object to the untimeliness of the grievance by agreeing to arbitration *after* the thirty-day period had already expired. The Court agrees. In *Knollwood,* the Sixth Circuit held that an employer waived its right to object to the arbitrator's jurisdiction to decide a grievance by agreeing to arbitrate the matter in accordance with the collective bargaining agreement after the collective bargaining agreement had expired. *Id.* at 369. In the present case, San Marino similarly waived its right to object to the arbitrator's jurisdiction by agreeing, on or about July 31, 1984, to resolve the dispute by arbitration, when the thirty-day period had expired no later than June 1984.

In connection with this motion, the parties submitted a copy of the Board's "Arbitration Deferral Policy Under *Collyer*—Revised Guidelines," dated May 10, 1973. Generally, this document describes the circumstances under which the Board will defer an unfair labor practice charge to arbitration. San Marino argues that under the guidelines, a party may agree to deferral without waiving its right to object to the arbitrability of the underlying dispute. In this regard, San Marino refers the Court to pages 16 and 50 of the guidelines. The guidelines in fact state, at those pages, that an objection to arbitrability·is not to be considered as inconsistent with a willingness to arbitrate. The guidelines further state, however, that deferral under *Collyer* is premised on the assumption that the parties have "disclaimed any intention of asserting in arbitration any procedural defenses based on the expiration of the time limitations for the filing, processing, or arbitration of the grievances under the contract." *Arbitration Deferral Policy Under Collyer—Revised Guidelines* at 16. Thus, while a party may agree to deferral and reserve its right to object to substantive limitations on arbitrability, it may not claim temporal limitations as a defense.

For the reasons set forth above, Plaintiff San Marino's Motion to Set Aside the Arbitration Award is DENIED and Defendant Union's Motion to Confirm the Arbitration Award is GRANTED. Defendant shall submit an appropriate order.

APPENDIX A

1982–1984

AGREEMENT

between

LABORERS LOCALS

334 and 1076

and

POURED CONCRETE

WALL ASSOCIATION, INC.

and

Other Employers

AGREEMENT

THIS AGREEMENT is made between LABORERS' LOCALS 334 and 1076, LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO (hereinafter referred to as "Union" or "Unions"), and the POURED CONCRETE WALL ASSOCIATION, INC., a non-profit trade association of contractors engaged in the construction of monolithic walls (hereinafter called the "Association"), and other Employer(s) (hereinafter called "Employer(s)"). Any person, firm or corporation employing laborers under the jurisdiction of this Agreement is hereinafter called the "Contractor".

A member of the Association is herein called "Association Member" or "Member".

\* \* \*

[page 1]

ARTICLE IV

Wages and Other Benefits

\* \* \*

---

**11.** The record clearly establishes that San Marino agreed to arbitration. *See* NLRB Deferral Letter, dated July 31, 1984, Defendants' Brief, Exhibit E; Transcript, p. 42; Petition to Set Aside Arbitration Award, ¶ 8.

## VACATION AND HOLIDAY

The Contractor agrees to pay monthly as shown above into the Laborers' Vacation and Holiday Trust Fund, Detroit and Vicinity, under the terms of an Agreement dated June 12, 1968 between the parties hereto and which is hereby made a part of this Agreement by reference. When the work performed is on an overtime basis, the contribution per hour covering the Vacation and Holiday fringe shall also be on an overtime basis. The Board of Trustees shall be authorized to determine the distribution date of benefits and the cut-off date of contributions each year.

\* \* \*

## ARTICLE V

### Insurance—Pension

A. In addition to all other compensation required by the terms of this Agreement, the Contractors and others signatory hereto agree to make regular contributions to the welfare fund, known as the "Laborers' and Poured Concrete Workers Insurance Fund", hereafter referred to as "LPCWIF", administered by an equal number of up to ten (10) Trustees representing Contractors and the Unions. All Contractors shall pay to the aforesaid Insurance Fund the amounts required under Article IV.

\* \* \*

## PENSION

The Employer agrees to make monthly contributions as shown herein into the designated depository of the Laborers' Pension Trust Fund, Detroit and Vicinity, for the purpose of providing pensions for the employees covered by this Agreement and agrees to bound by all provisions of the Declaration of Trust of the Laborers' Pension Trust Fund, Detroit and Vicinity, dated July 9, 1958, which is hereby made part of this Agreement by reference. Pension contributions shall be on all hours worked.

## ARTICLE X

### Complaints

A. Any party to this Agreement alleging a violation hereof shall file a written complaint with the other party hereto setting forth in a signed statement the grounds for complaint and requesting abandonment of the causes thereof.

All alleged violations of this Agreement must be filed in writing by employees or a representative of the Union(s) with the Association Member within thirty (30) calendar days of the occurrence of the claimed violation. If not so filed, the matter shall not form the basis of a complaint or grievance under this Agreement and such claimed violation shall be waived.

B. When one of the Union(s) is the complainant, it shall lodge its complaint with the representatives of the Contractor, and when the Contractor is the complainant, it shall lodge its complaint with the business agent of the Unions.

C. Should the reasonableness of a complaint be challenged by the Contractor or by the Unions, the representative of said Contractor shall meet with the business agent of the Unions for the purpose of considering and adjusting the matter in controversy.

D. The representative of the Contractor shall arrange a convenient time and place for said meeting, which shall be held within twenty-four (24) hours of the time requested for said meeting.

\* \* \*

F. In the event that any controversies between the Unions and the Contractors shall not be settled as above outlined, the controversies shall be referred to a committee of six (6), consisting of three (3) representatives designated by the Association and three (3) representatives of the employees, which shall be known as the Labor Relationship Committee (LRC) and the decisions of the LRC on all questions affecting the contractual relationship between the parties hereto shall be final. If this committee cannot agree, the matter in dispute shall be referred to an arbitrator selected by the committee or through the Federal Mediation and Conciliation Service.

## ARTICLE XIV

### Contracting Out

Any Contractor signatory to or bound by this Agreement, shall, if he subcontracts

any work done or to be done at the site of construction and under the jurisdiction of the Unions, be responsible for compliance with his contract by any person, firm or corporation to whom such work is subcontracted. This shall mean that any Contractor signatory to or bound by this Agreement subcontracting work under this contract must give notice to the Unions that such work is being subcontracted, to whom the work is being subcontracted, and the Contractor hereby agrees that he will become surety for and assume all obligations for anyone to whom work is subcontracted if that subcontractor does not pay all of the wages, fringe benefits and other conditions called for by this Agreement.

The operation of the Article applies:

(a) Only to times when the Contractor employs workers who are represented by the Unions, and

(b) Only to sites of construction at which the Union-represented Laborers are working.

## ARTICLE XVI

### Duration—Termination
\*     \*     \*

Employers, signatory to this Agreement or who are otherwise bound by this Agreement and who are not members of nor represented by the Association, agree to be bound by all of the terms and conditions set forth in this Agreement and to become a party to such Agreement.

## APPENDIX B

### United States of America
### IN THE MATTER OF ARBITRATION BEFORE THE LABOR RELATIONSHIP COMMITTEE

### LABORERS' LOCALS # 334 AND # 1076, UNION
and
### SAN MARINO CEMENT WALLS, INC., EMPLOYER,
### AWARD OF THE LABOR RELATIONSHIP COMMITTEE
\*     \*     \*

## EMPLOYER'S CONTENTIONS AND L.R.C. FINDINGS

The Employer contends that the Unions' grievance is untimely under Article X (A) (Joint Exb. 1 and 2). It is there stated that alleged violations of the Agreement(s) must be filed in writing by the employee or Union with the Association Member within 30 calendar days of the claimed violation.

The L.R.C. Finds that the Employer's position is not well taken for the following reasons:

1) The NLRB's July 31, 1984, deferral letter states that the Employer (San Marino) "has advised this office that it is agreeable to having the subject dispute processed under the grievance-arbitration procedures", and

2) the Unions by letter dated September 5, 1984, notified San Marino that the matters alleged in 7–CA 23497 were subject to the arbitral procedures of Article X (F), and

3) The Unions cannot be penalized for not filing a grievance in 1980 or 1981 or 1982 or 1983 or sooner since it was San Marino that did not notify the Unions, as required by Article XIV, that it was in fact contracting out bargaining

[page 6]

unit work and to whom, and

4) The Unions were informed when visiting certain of San Marino's jobs from time to time that the persons doing the work were working for San Marino (when in fact they were not). The Unions were thus not aware of possible problems relating to contracting out, and

5) The 30 day time limit works in favor of "the Association member". San Marino was not an Association member.

[page 7]