**ARCH OF ILLINOIS, A DIVISION OF APOGEE COAL CORPORATION, a Delaware Corporation, Plaintiff–Appellant,**

v.

**DISTRICT 12, UNITED MINE WORKERS OF AMERICA and Local Union No. 1392, United Mine Workers of America, Defendants–Appellees.**

No. 95–3233.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1996.

Decided June 13, 1996.

James W. Morris, Barrett, Twomey, Morris, Broom & Hughes, Carbondale, IL, Ronald E. Meisburg (argued), Christopher Slaughter, Washington, DC, for Arch of Illinois.

Patrick J. O'Hara (argued), Cavanagh & O'Hara, Springfield, IL, for United Mine Workers of America, Dist. 12 and Local 1392, United Mine Workers of America.

Before POSNER, Chief Judge, and FLAUM and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

The plaintiff, Arch of Illinois ("AOI"), appeals the district court's grant of summary judgment in favor of the defendants, District 12 and Local Union No. 1392 of the United Mine Workers of America ("the Union"). AOI filed· this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking to vacate an arbitrator's decision that AOI had violated a collective bargaining agreement between the parties by discharging a unionized employee. The Union moved for summary judgment, seeking to enforce the arbitration award. The district court upheld the arbitration award, finding that the award drew its essence from the collective bargaining agreement. We agree with the district court and therefore affirm its decision.

I.

The relevant facts in this appeal are essentially undisputed. AOI operates a bituminous coal mine located in Perry County, Illinois and employs mine workers represented by the Union. AOI and the Union are parties to a collective bargaining agreement ("the Agreement") that was in effect at all times relevant to this action. At approximately 6:00 a.m. on January 25, 1995, AOI managers discovered John Pierce, a worker covered by the Agreement, asleep in his bulldozer. At the time of the discovery it was still dark, and the bulldozer was in a busy area of the mine with its lights off and its engine running. Pierce's conduct violated a policy implemented at the mine by AOI, which provided that:

> So that the occasions for discipline or discharge might be minimized, each employee should avoid conduct which violates reasonable standards of a good working relationship. Violation of any of the following rules may result in discipline or discharge.

1. Failure to observe safety rules and regulations (including Federal, State, or Company safety rules).
2. Sleeping, gambling, or playing cards on Company premises.

As a result of his conduct, AOI suspended Pierce with the intent to discharge him.

The Agreement contains various provisions regarding the termination of mine employees. Article IA broadly provides that "[t]he management of the mine, the direction of the working force and the right to hire and discharge are vested exclusively in the Employer." Article XXIV, entitled "Discharge Procedure," grants mine employees specific procedural and substantive rights relating to disciplinary measures taken by AOI. Section (a) of this Article states that "[n]o Employee covered by this Agreement may be disciplined or discharged except for just cause. The burden shall be on the Employer to establish grounds for discharge in all proceedings under this Agreement." Section (d) of this Article provides for the immediate arbitration of disputed discharges, with the following limitations on the arbitrator's discretion:

> If the arbitrator determines that the Employer has failed to establish just cause for the Employee's discharge, the Employee shall be immediately reinstated to his job. If the arbitrator determines that there was just cause for the discharge, the discharge shall become effective upon the date of the arbitrator's decision.

After AOI gave Pierce notice of its decision to discharge him, Pierce filed a grievance with AOI, demanding to be reinstated and claiming that AOI lacked just cause for the discharge. AOI denied Pierce's grievance, and the Union then arranged for the immediate arbitration of the discharge pursuant to Article XXIV, Section (d) of the Agreement.

A full hearing was held before arbitrator Marvin J. Feldman on February 3, 1995. Five days later the arbitrator issued an award reinstating Pierce effective March 15, 1995. In its opinion, the arbitrator first examined the evidence in favor of AOI's position:

> It might be noted that the contract demands just cause for termination. It is apparent that sleeping is sufficient just cause to trigger a discharge. That is true especially in this case because the engine was running, the grievant was described as being in a busy area, and all of the grievant's lights were not operative in the night season. Thus, it appears that the grievant not only was sleeping but he did it in such a manner so as to provide an unsafe shroud around his behavior. For all of those reasons therefore the grievant should be terminated.

The arbitrator then immediately turned to what it viewed as the crucial flaw in AOI's case:

> [T]he grievant in this case was an employee with some twenty years of service.... [I]t is apparent that the company did not take into account the grievant's seniority of some twenty years.
>
> . . . . .
>
> The company must give some credence to seniority .... seniority is an extremely important facet of the makeup of an employee. It shows loyalty, it shows recognized ability, it shows efficiency.... The company however failed to take that into account when it terminated this particular grievant.
>
> . . . . .
>
> I am giving due understanding to the word seniority as uttered in the contract. While a senior person has no greater rights that [sic] the junior person, the senior person's length of service must be recognized when that individual is dealt with by way of termination. It is further noted in that regard that even the rules do not mandate discharge for sleeping.
>
> As a result of all of this discussion, it is imperative to understand that the grievant should be given a last chance at this mine because of his seniority involved in this particular matter and I am willing to accomplish something in that regard.

The arbitrator therefore concluded that Pierce was entitled to relief.

On March 22, 1995, AOI filed this action in district court to vacate the arbitration award, claiming that the arbitrator contravened the

plain language of the Agreement by finding that there was just cause to discharge Pierce and yet refusing to direct his termination. Both AOI and the Union moved for summary judgment, and the district court granted the Union's motion, thereby upholding the arbitration award. The court found that the award reflected a determination by the arbitrator that, while sleeping on the job *could* be just cause for discharge, AOI lacked just cause to discharge Pierce because it failed to examine his work record and length of employment. On appeal, AOI once again argues that the arbitrator, in rendering the award, ignored the plain language of the Agreement.

## II.

We review the district court's grant of summary judgment *de novo* and apply the same standard as that employed by the district court. *Jasper Cabinet Co. v. United Steelworkers of America,* 77 F.3d 1025, 1026 (7th Cir.1996). Summary judgment should be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If the party opposing a motion for summary judgment bears the burden of proof on an issue, he must go beyond the pleadings and affirmatively demonstrate a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

It has long been established that judicial review of arbitration awards under collective bargaining agreements is extremely narrow. *See, e.g., Jasper Cabinet Co.,* 77 F.3d at 1028; *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). The Supreme Court has stated that federal courts must enforce an arbitration award unless it fails to "draw its essence from the collective bargaining agreement" and instead represents the arbitrator's "own brand of industrial justice." *Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361. So long as the award is even arguably based on the arbitrator's interpretation of the agreement, it draws its essence from the agreement, even if the reviewing court is convinced that the arbitrator's interpretation is plainly wrong. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987); *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.,* 935 F.2d 1501, 1505 (7th Cir.1991). Because the parties bargained for the arbitration of disputes regarding the meaning of the collective bargaining agreement, they implicitly committed to abide by the arbitrator's interpretation of the agreement. *Chicago Typographical Union,* 935 F.2d at 1505. Our role is therefore limited to determining whether the arbitrator "exceeded the powers delegated to him by the parties," i.e., whether he failed to arbitrate the dispute in accord with the agreement. *Ethyl Corp. v. United Steelworkers of America,* 768 F.2d 180, 184 (7th Cir.1985), cert. denied, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986). Given this limitation on our authority, and the principle that we resolve any reasonable doubts in favor of enforcing the arbitration award, *Polk Bros. v. Chicago Truck Drivers Union,* 973 F.2d 593, 597 (7th Cir.1992), "[i]t is only when the arbitrator *must have* based his award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to 'draw its essence from the collective bargaining agreement.' " *Ethyl Corp.,* 768 F.2d at 184–85 (emphasis added). AOI has failed to clear this high hurdle of demonstrating that the arbitrator must have based his award on something outside the Agreement.

Both the language of the arbitrator's opinion and the award itself can establish that the arbitrator failed to interpret the agreement and instead applied his own sense of equity. *See, e.g., Chicago Typographical Union,* 935 F.2d at 1506. We will refuse to enforce an arbitrator's award if his own words manifest an infidelity to his obligation to interpret the collective bargaining agreement. *Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361; *see also Chicago Typographical Union,* 935 F.2d at 1505–06; *Ethyl Corp.,* 768 F.2d at 185. However, "a mere ambiguity in the opinion accompany-

ing an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361; *see also Misco*, 484 U.S. at 38, 108 S.Ct. at 370–71.[1] Thus, before we reject an award because of language in the arbitrator's opinion, the opinion must unambiguously reflect that the arbitrator based his decision on noncontractual grounds. AOI argues that the arbitrator clearly flouted the plain language of the Agreement by refusing to order Pierce's termination despite finding that AOI had just cause to discharge him. Under AOI's view of the opinion, the arbitrator first determined that there was just cause for the discharge and then decided to modify the penalty, thereby ignoring the following mandatory language of the Agreement: "If the arbitrator determines that there was just cause for the discharge, the discharge shall become effective upon the date of the arbitrator's decision."

Undeniably, if the arbitrator had specifically found that AOI had just cause to discharge Pierce, but then stated something to the effect of "fairness dictates that Pierce shouldn't have been discharged," we would conclude that the arbitrator exceeded his proper role and refuse to enforce the award. We do not believe, however, that the arbitra-

tor's opinion unambiguously found that AOI had just cause to discharge Pierce. AOI's interpretation of the arbitrator's opinion is a reasonable one. The arbitrator stated that "sleeping is sufficient just cause to trigger a discharge," he did not directly integrate his discussion of seniority with his analysis of just cause, and nowhere in the opinion did he explicitly find that AOI lacked just cause to discharge Pierce. Yet AOI must do more than merely show that its interpretation of the opinion is reasonable; it must demonstrate that the opinion cannot reasonably be interpreted in any other way. *See Enterprise Wheel & Car Corp.*, 363 U.S. at 597–98, 80 S.Ct. at 1361–62. This AOI has failed to do. The basic obstacle to AOI's position is that the arbitrator did not explicitly find that AOI had just cause to discharge Pierce. The arbitrator's failure to make a clear finding in this regard created ambiguity in his opinion.[2] Because of this ambiguity, we cannot say with certainty that the arbitrator's own words demonstrate that he failed to interpret the Agreement.[3]

 The arbitrator, of course, cannot simply pay lip service to his obligation to follow the collective bargaining agreement. We will set aside an arbitration award if "there is no possible interpretive route to the award, so a noncontractual basis can be in-

---

1. We have noted in this respect that:

 It would be a serious practical mistake ... to subject the reasoning in arbitrators' opinions to beady-eyed scrutiny. It might discourage them from writing opinions at all (a point made in *Enterprise Wheel & Car*, 363 U.S. at 598, 80 S.Ct. at 1361). Arbitrators are not required to write opinions any more than juries are. It is a good thing when they do, because writing disciplines thought. We should not create disincentives to their doing so. The more basic point, however, is that since arbitrators' interpretations must be accepted even when erroneous, it cannot be correct that arbitrators are required to write good opinions.

 *Chicago Typographical Union*, 935 F.2d at 1506.

2. The district court believed that a careful reading of the opinion demonstrates that the arbitrator found that, while sleeping could trigger just cause for discharge, it did not in Pierce's case because of his seniority. In the district court's view, the arbitrator held that AOI failed to establish just cause for discharge but did establish just cause for discipline. This reading by the district

court, although not compelled by the arbitrator's opinion, is certainly reasonable.

3. AOI's reliance on *Morgan Services, Inc. v. Local 323, Chicago & Central States Joint Bd.*, 724 F.2d 1217 (6th Cir.1984), is misplaced. The agreement in *Morgan Services* provided that "any employee may be discharged without [redress] if proven guilty of ... insubordination." *Id.* at 1220. The employee was obviously guilty of insubordination. The arbitrator found as much, but ordered reinstatement of the employee. *Id.* The Sixth Circuit held that, once the employee was proven guilty of insubordination, the "without redress" language unambiguously meant that the employer's decision to discharge was not open to review by the arbitrator. *Id.* at 1223. The court therefore concluded that the award did not draw its essence from the agreement. *Id.* at 1223. In contrast to *Morgan Services*, the arbitrator in this case did not make a clear finding that AOI had just cause to discharge Pierce. The parties agree that if the arbitrator had made such a finding, the plain language of the Agreement would have required the discharge of Pierce.

ferred." *Chicago Typographical Union*, 935 F.2d at 1506. Thus, although the arbitrator in his opinion may purport to interpret the collective bargaining agreement, if we determine that the award itself cannot logically follow from the agreement, we will refuse to enforce the award. The interpretive route in this case, however, is not difficult to discern. Under the Agreement, AOI could discharge Pierce only for "just cause." The Agreement explicitly leaves the determination of just cause to the arbitrator. Just cause is a flexible concept, embodying notions of equity and fairness, and is certainly open to interpretation by the arbitrator. *See E.I. DuPont de Nemours & Co. v. Grasselli Employees Independent Assoc. of East Chicago, Inc.*, 790 F.2d 611, 614–15 (7th Cir.) (finding that arbitrator could consider notions of fault and procedures afforded to grievant in determining just cause), *cert. denied*, 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986). A finding that AOI lacked just cause to discharge Pierce because of its failure to consider his seniority is not so far-fetched as to lead us to deduce that the arbitrator relied on a noncontractual basis for the award.

Arch also argues in its reply brief that Article XXIV(d) required the arbitrator to order either the immediate discharge (upon finding just cause) or the immediate reinstatement (upon finding no just cause) of Pierce. Arch asserts that, because the arbitrator granted neither of these circumscribed remedies, but rather reinstated Pierce effective approximately a month after his decision, there is no possible interpretive route to his award. However, since this argument was not clearly presented in Arch's initial brief to this Court, it could be deemed waived. *See Maher v. Harris Trust & Sav. Bank*, 75 F.3d 1182, 1191 (7th Cir.1996); *Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir.1990) ("All arguments for reversal must appear in the opening brief, so that the appellee may address them.") In any event, contrary to Arch's position, we believe that the arbitrator's award "can be rationally de-rived from some plausible theory of the general framework or intent of the agreement." *Ethyl Corp.*, 768 F.2d at 186 (quoting *Desert Palace, Inc. v. Local Joint Executive Bd.*, 679 F.2d 789, 793 (9th Cir.1982)). In effect, the arbitrator determined that Pierce's discharge was unjustified, but then disciplined Pierce by imposing a thirty day suspension without pay. Article XXIII(c)(4) of the Agreement states that "[t]he parties agree that the expeditious processing of grievances is a major function of this Article, and that consolidation of cases before a single arbitrator can aid in achieving that goal, and where applicable, this procedure should be given serious consideration." Given this provision, it is certainly possible that the arbitrator's imposition of a thirty day suspension, which obviated the need for a separate disciplinary hearing against Pierce, followed from a plausible theory of the general framework of the Agreement.[4]

### III.

For the foregoing reasons, we conclude that the arbitration award draws its essence from the Agreement and does not represent the arbitrator's own brand of industrial justice. We therefore AFFIRM the district court's grant of summary judgment in favor of the Union. Since we do not believe this appeal was frivolous, the parties shall bear their own costs and attorneys' fees in this Court.

---

4. Article XXIV is entitled "Discharge Procedure," while Article XXIII is entitled "Settlement of Disputes" and contains general procedures applicable to disciplinary proceedings. These two Articles are poorly drafted, and the extent to which Article XXIII applies to cases where the employer seeks to discharge an employee is unclear. What is clear, however, is that we resolve any reasonable doubts in favor of enforcing the arbitrator's award. *Polk Bros.*, 973 F.2d at 597.