305 So.2d 696 (1974)
Arlene McMurray, wife of/and Thomas H. STRINGER
v.
Robert E. TODD, Jr., et al.
Ivy J. TROSCLAIR, Jr., and Ivy J. Trosclair, Sr.
v.
The TRAVELERS INDEMNITY COMPANY et al.
No. 6520.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1974.
Rehearing Denied January 14, 1975.
Dillon & Williams, Gerard M. Dillon, New Orleans, for defendants-appellees and third party plaintiffs-appellants, Parish of Jefferson and Fireman's Fund Ins. Co.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Claude D. Vasser, New Orleans, for defendants-appellants, *697 Robert E. Todd, Jr., and Southern Business Machines Co. and the Travelers Indemnity Co.
O'Keefe, O'Keefe & Berrigan, Allen H. Danielson, Jr., New Orleans, for defendants-appellees, Thomas H. Stringer, Jr. and Volkswagon Ins. Co.
Jean E. Senac, Jr., and Richard S. Vale, Metairie, for plaintiffs-appellees, Ivy J. Trosclair, Jr. and Ivy J. Trosclair, Sr.
Gerard J. Hansen, New Orleans, for plaintiff-appellee, Thomas H. Stringer.
Kronlage, Dittmann & Caswell, Albert S. Dittman, Jr., New Orleans, for plaintiff-appellee, Arlene McMurray Stringer.
Before REDMANN, LEMMON and STOULIG, JJ.
LEMMON, Judge.
These two consolidated cases had their origin in a three-car intersectional collision at Veterans Highway and Papworth Street in Jefferson Parish. Finding that the two cars traveling east on Veterans had entered the intersection on a green light, the trial judge concluded that Robert Todd, traveling north on Papworth, had entered the intersection on a red light, and rendered judgment accordingly.
Todd's appeal questions this factual finding, in view of evidence that the signal was malfunctioning, and further reurges the plea of contributory negligence.
At the point of the accident Papworth was a two lane cross street, and Veterans was a six lane divided thoroughfare with three lanes for eastbound traffic, in addition to a left turn lane. Prior to the accident Thomas Stringer occupied the center lane and Ivy Trosclair occupied the left lane. As Stringer proceeded into the intersection, he collided with Todd (entering on Papworth), and the impact pushed Stringer into Trosclair, who had entered the intersection slightly behind Stringer.
All three drivers claimed to have entered the intersection on a favorable light, and there was other testimony that the light did not operate properly, both before and after the collision. The trial judge first determined that the signal was not malfunctioning at the time and then, apparently on the basis that the light had operated properly and flashed a green signal only in one direction, resolved the conflicting versions and determined that the signal was green for Veterans only.
As to the malfunction, the two investigating officers, when all drivers claimed to have had a green light, specifically checked the sequence through four cycles and found the signals to be operating properly. Furthermore, they observed no malfunction during the 20 to 25 minutes they were on the scene. These officers regularly patroled this section of the heavily traveled highway and had never observed any previous disorder in that particular control.
Trosclair, who had slowed to a stop when the light turned to red as he was about a block away, did not notice any malfunction before or after the accident. Stringer noticed only that the red interval prior to the accident appeared to be a "quick light," claiming he had also slowed for the light change more than a block before the intersection, but had reaccelerated slightly when the light changed back to green as he neared the intersection. Mrs. Stringer, a front seat passenger, stated there had been no amber signal when the light changed from green directly to red. She further estimated the red light showed for 10 to 15 seconds.[1]
Stringer admitted discussing a malfunctioning light after the accident, but didn't remember how they went about checking the light or what, if anything, they discovered unusual about the light sequence.[2]
*698 Neither Mr. nor Mrs. Todd noticed anything unusual about the light before the crash, both testifying that the light was red when they first noticed it and changed to green as they neared the intersection. However, Todd stated that after the wreck he and Trosclair looked at the signal facing Veterans and saw the light flicker red, then change to a constant green, and then on the change to red began to flicker again. Todd stated he pointed out the malfunction to the police officer.[3]
Mrs. Todd noticed after the accident that the light changed from green to red without an amber signal, but recalled nothing particularly rapid or otherwise unusual about the sequence.
Two disinterested witnesses traveling in a car together on Veterans also testified. The driver, after noticing the light malfunction, slowed down and saw several cars collide. He could not, however, recall the nature of the disorder. Moreover, his version of the accident itself was inconsistent with that of his passenger, who testified that they came to a stop behind Stringer's car at the intersection prior to the accident. The passenger did not observe the light because of his position in the back seat.
Another disinterested witness, called by Todd, stated that the light had been malfunctioning for several days and had been out of order occasionally for six months. (None of the other witnesses, most of whom traveled the route regularly, had seen this signal malfunction before.) He further testified that: Traveling south on Papworth, he saw both green and red showing as he approached and stopped at the intersection, second in line; the car in front went across when the light changed to green and turned left on Veterans; he then crossed the westbound lanes, and while he was in the median preparatory to making a left turn, the accident occurred; and while in the median he noticed the light was green for traffic in one direction and both green and yellow for traffic in the other. He further stated that when he returned to the scene 10 or 15 minutes later, he and the police officer watched the continued malfunctioning, and that the light was still out of order that evening.[4]
Finally, the supervisor and the signal technician of the Jefferson Parish Traffic Engineering Division testified that they had never seen or heard of a signal light exhibiting green simultaneously for mainstream traffic and for the cross street. The supervisor further stated that a light could malfunction in one direction and not in the other, but that it was impossible for the light to show green in both directions; that if the light was stuck on green for one direction, that light would go through its normal cycle (except for the constant green), and when the signal for opposing traffic was green, the stuck light would exhibit either green and amber or green and red; and that if a light showed green, flickered red and returned to green, the problem of the contacts burning out of position would not correct itself but would get worse, and the light finally would not work at all.
The problem presented for resolution to the trial judge involved both credibility and probability. Mrs. Todd and Mrs. Stringer both described the only light irregularity as being the absence of a caution signal between green and red for Veterans; such a disorder, however, is unimportant because both drivers on Veterans claimed to have entered the intersection just at the beginning of the green phase. Furthermore, little weight could be accorded *699 to the driver on Veterans who noticed a malfunction but couldn't recall the nature of the disorder. The only witnesses who described a specific malfunction pertinent to the determination of whether a signal disorder contributed to this accident were Todd and the motorist traveling south on Papworth. Yet Todd and this witness described different malfunctions, and their assertions about pointing out a malfunction to other persons were specifically denied. Furthermore, Todd's description of a flickering light was contradicted by the engineering supervisor's testimony that a flickering light would worsen and by the officer's testimony that the light operated properly several minutes later. The Papworth motorist's testimony was principally indicative of a stuck green phase for Papworth, a condition which would have produced dual signals for Papworth when the light turned green for Veterans and which, if proved, should have alerted Papworth traffic to proceed cautiously.
The trial judge apparently rejected the testimony of Todd and this witness that the light was showing constant green for Papworth at the time of the accident.
After reviewing all of the evidence, we cannot find manifest error in this resolution of the conflicting testimony. Once the judge accepted the evidence that the light was exhibiting constant green for Veterans at the moment of the accident, he could properly conclude from the evidence that the light was not simultaneously flashing constant green for Papworth.

CONTRIBUTORY NEGLIGENCE
Todd contends Stringer's contributory negligence was proved by his own testimony of the light's unusual behavior and the testimony of the driver on Veterans that he noticed the light malfunction. As stated above, the trial judge apparently disregarded the driver's vague statement of signal malfunction. Furthermore, Stringer's testimony was simply that he saw a shorter than usual red signal before the normal green, which was showing when he entered the intersection.
Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, the standard being that of a reasonable man under like circumstances. Smolinski v. Taulli, La., 276 So.2d 286 (1973). Inasmuch as we find Stringer's behavior reasonable, we conclude contributory negligence was not proved.

QUANTUM
Mrs. Stringer answered the appeal, seeking an increase in the award of general damages.
In the March 4, 1970 accident Mrs. Stringer sustained a fractured clavicle, which required her to be hospitalized for about one week at absolute bed rest. Upon her discharge she was fitted with a clavicular brace. She attained satisfactory healing and returned to work in mid-April. By April 29, 1970 she was free of pain. On May 18, 1970 she had regained normal shoulder motion and was discharged, with advice to limit her activities for two months. The orthopedic specialist anticipated no residual disability.
We conclude the award of $3,500.00 to this 25-year old woman was within the range of discretion accorded the trial judge.
Ivy Trosclair also answered the appeal, complaining that the award of general damages was inadequate and that no award was made for proved loss of wages.
In the March 4, 1970 accident Trosclair sustained a cervical strain and a shoulder contusion. The doctor prescribed conservative treatment and use of a cervical collar. In May the doctor discontinued the collar and advised the use of exercises. He was able to return to work as a stock *700 clerk on May 13, but his position had been filled.
On June 18, 1970 Trosclair had a full range of motion and no spasm, and the doctor discharged him. His medical bills totaled $155.00.
We conclude the award of $1,500.00 in general damages was within the much discretion accorded the trial judge.
The evidence established that Trosclair worked 33 hours per week, earning $1.60 per hour, or $50.60. Since he was disabled for approximately 10 weeks (March 4 to May 13), he is entitled to $506.00 for this item of damages.

APPEAL BY STRINGER'S COLLISION INSURER
In the suit filed by Trosclair, Stringer and his insurer (named as defendants) filed a third party demand against Todd for contribution.[5] The insurer (Volkswagon Insurance Company) then amended its third party demand to seek recovery of the property damage it paid to Stringer under the collision feature of its policy.[6]
The judgment of the trial court did not specifically adjudicate this demand. By answer to the appeal Volkswagon requests us to rectify this oversight.
A trial court's failure to adjudicate an incidental demand, when rendering judgment on the merits of the principal demand, is tantamount to denying it. Voth v. American Home Assurance Company, 219 So.2d 236 (La.App. 1st Cir. 1969).
The judgment in effect rejected Volkswagon's demand against Todd in its entirety. As to Todd, Volkswagon was not an appellee and was therefore not entitled to use an answer to the appeal to seek review of the denial to that demand.
Only an appellee can use an answer to the appeal to have the judgment modified or reversed in part. C.C.P. art. 2133. This procedure cannot be used by a party whose demand was totally rejected and who was not an appellee in any sense.[7] It was necessary for Volkswagon to take an appeal from the dismissal of the incidental demand in its entirety. When it failed to do so, the judgment which dismissed the incidental demand became final and definitive.

DECREE
The judgment is amended to increase the award in favor of Ivy Trosclair by $506.00. As amended, the judgment is affirmed.
Amended and affirmed.
NOTES
[1] The controls were set for the green light to show on Papworth for 21.25 seconds.
[2] Mr. and Mrs. Stringer had joined the Parish of Jefferson as a defendant, alleging negligence related to the malfunction of the light.
[3] Trosclair and both officers denied observing any malfunction.
[4] He was inconsistent with all other witnesses in several particulars. He was the only witness who described more than one color showing simultaneously or who saw a truck stopped in the left lane on Veterans just before the accident. He also testified he passed the wrecked cars in the left lane on Veterans, when all witnesses denied there was room to pass on the left.
[5] The two suits were consolidated in the trial court, but the record was prepared and the matter argued as a single case on appeal.
[6] We recognize, but do not reach, the issue as to whether a third party demand can exceed the principal demand.
[7] The problem would have been more clearly presented if Volkswagon had filed a separate suit against Todd. The appellate posture of the parties would then have placed Volkswagon as a pure appellant and Todd as a pure appellee.