348 So.2d 232 (1977)
UNITED TEACHERS OF NEW ORLEANS
v.
ORLEANS PARISH SCHOOL BOARD.
No. 8429.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1977.
Rehearing Denied August 1, 1977.
*233 Nelson, Nelson & Lombard, Ltd., John P. Nelson, Jr., Patricia E. Saik, New Orleans, for plaintiff-appellee.
Polack, Rosenberg, Rittenberg & Endom, Franklin V. Endom, Jr., New Orleans, for defendant-appellant.
Before SAMUEL, REDMANN and LEMMON JJ.
SAMUEL, Judge.
Plaintiff, a union of teachers and certain other employees in the New Orleans public school system, filed this suit against the Orleans Parish School Board to compel arbitration of new teacher evaluation policies and procedures sought to be instituted by the Board as allegedly required by a collective bargaining agreement between the litigants.
Defendant filed exceptions of vagueness and no cause of action and also answered the petition denying plaintiff's right to arbitrate the implementation of new teacher evaluation practices.
Defendant's exceptions were overruled, and judgment was rendered on the merits ordering the defendant Board to submit to arbitration. Defendant has appealed from that judgment.
Plaintiff is the recognized collective bargaining representative for its members in the New Orleans public school system pursuant to a collective bargaining agreement executed between the Union and the Board in September of 1975. Thereafter, the superintendent of Orleans Parish schools established new teacher performance evaluation procedures which the Union contends were implemented in violation of the collective bargaining agreement.
The agreement between the Union and the Board provides for mandatory arbitration of certain grievances spelled out in that document. In accordance with the grievance procedure, the Union set forth its grievance by stating the "Superintendent has instituted a new written evaluation regulation in violation of contract terms and without negotiating over impact with UTNO." The grievance was answered on July 6, 1976 by the Board's assistant superintendent for personnel who took the position the new teacher evaluation program was simply a further refinement of policy regulations already in existence and was consistent with the teacher evaluation provisions contained in the collective bargaining agreement. On July 9, 1976, the Union appealed this response to the superintendent of schools in accordance with the contractual grievance procedure, and the superintendent responded by stating the agreement had not been violated by the new evaluation provisions because: (1) they were not in conflict with the evaluation provisions of the collective bargaining agreement; and (2) the Board retained the *234 exclusive right to evaluate its staff. Pursuant to the contract, the Union gave notice to the Board of its desire to appeal the dispute to arbitration. On October 12, 1976, the Board answered, denying the dispute was arbitrable. Consequently, the Union filed this action[1] to determine whether the dispute concerning implementation of new teacher evaluation procedures should be submitted to arbitration.
Article XIII of contract between the Union and the Board governs teacher evaluation procedures. The contract provides:
"13:1 Progress reports on all probationary, temporary and substitute employees shall be submitted periodically.
13:2 The purpose of periodic progress reports on probationary employees is to evaluate the quality of service rendered by the employee in his/her particular position. It will enable the employee's supervisor to judge his/her progress and ability and enable him/her to become aware of his/her strengths and weaknesses. It will assist the employee's supervisor in helping the employee overcome weaknesses through personal conferences, guidance and special assistance. Finally, this report will provide an important criterion for the employee's promotion, transfer and eligibility for tenure status.
13:3 A special progress report in the form of a letter addressed to the Assistant Superintendent for Personnel, through the appropriate administrative superiors, may be submitted at any time on any tenured employee when it becomes necessary, in the opinion of the immediate supervisor, to bring to the attention of the school administration that a particular employee is failing to properly discharge the duties of his/her position or to commend a particular employee for outstanding service in his/her position. All such letters will be brought to the attention of the Superintendent, with a copy to the employee concerned, and appropriate follow-up action instituted.
13:4 Discipline
13:4.1a No member of the bargaining unit shall receive for willful neglect of duty, a written reprimand, suspension or discharge without just cause.
13:4.1b No probationary teacher shall be dismissed for reasons of professional incompetency without adequate notice thereof and the opportunity to respond at the administrative hearing.
13:4.1c All situations involving removal of a teacher with tenure shall be in accordance with the requirements of the applicable laws of the State of Louisiana."
The Union contends the Board's unilateral implementation of teacher evaluation procedures violates these contractual provisions and also violates Section 4:3 of the contract, which provides:
"The BOARD shall not, during the life of this AGREEMENT establish any policy, practice, rules or regulation inconsistent with the terms of this AGREEMENT. If the BOARD intends to establish a new educational policy, practice, rules or regulation which has an impact upon the terms and conditions of employment of the teachers the BOARD shall negotiate over such impact with the UNION." (Emphasis ours).
On the other hand, the Board relies on two contractual provisions to support its assertion the dispute is not subject to arbitration. In part, Article 7:1 of the agreement provides:
"For the purpose of this AGREEMENT, a grievance is defined as a dispute between the BOARD and the UNION. . . with respect to the alleged violation of a specific provision of this AGREEMENT, provided that the term grievance shall not apply to (a) any matter for which a method of review is prescribed by law, or (b) any matter which according to law is either beyond the scope of BOARD authority or limited to unilateral action by the BOARD alone. . ." (Emphasis ours).
*235 The Board also relies on Paragraph 7:3.5(b) of the contract, as follows:
"In the consideration of the decision of any questions involving arbitrability, it is the specific agreement of the parties that:
. . . . .
(b) In the consideration of whether a matter is subject to arbitration, a fundamental principle shall be that the BOARD retains all of its rights to manage the school system, subject only to the express limitations set forth in this AGREEMENT; it is understood that the parties have not agreed to arbitrate demands which challenge action taken by the BOARD in the exercise of any such retained rights, except where such challenge is based upon a violation of express limitations set forth in this AGREEMENT."
The decisive issue presented for our determination is whether the implementation of the teacher evaluation procedures complained of by the Union is the exclusive prerogative of the Board as part of its legal authority and duty to promote, demote, discharge, or remove its teachers. If the Board has these rights exclusively as a matter of law, arbitration cannot be invoked[2] because as a public agency it may not delegate this authority in any way to the Union by contract.[3]
The defendant Board has the statutory authority to determine the number of teachers to be employed, to select these teachers, to hire them and fix their salaries, and to determine the number and location of schools. The Board is further authorized to make rules and regulations for its own government, not inconsistent with law or with the regulations of the Louisiana State Board of Education.[4] The plaintiff Union also stipulates the right to hire and fire as part of the school Board's legal authority. Moreover, as has been pointed out, the Board may not delegate any power given it by the legislature to other non-governmental agencies or persons.[5]
In our view, the right to hire, fire, promote, or discharge its teachers includes the corresponding right to evaluate the performance of those teachers in order to properly carry out the Board's decision-making powers as part of its management prerogative. Since the evaluation procedures are part of the Board's legal right to manage the school system, they fall within Article 7:1 of the agreement which exempts from the term "grievance" matters which are legally limited to unilateral action by the Board alone.[6]
Having concluded the teachers evaluation procedures promulgated by the Board are within its legal management authority, the judgment of the trial court ordering the Board to submit to arbitration must be reversed.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of the defendant, Orleans Parish School Board, and against the plaintiff, United Teachers of New Orleans, dismissing the latter's suit at its cost.
REVERSED.
NOTES
[1] The grievance procedure provides in Section 7:3.4 of the Collective Bargaining Agreement that resort to judicial procedures may be had when either party denies a dispute is arbitrable.
[2] Compare Stone v. Stone, La., 292 So.2d 686.
[3] Louisiana Teachers' Ass'n. v. Orleans Parish Sch. Bd., La.App., 303 So.2d 564.
[4] R.S. 17:81, R.S. 17:122. See Louisiana Teachers' Ass'n. v. Orleans Parish Sch. Bd., Id.
[5] Louisiana Teachers' Ass'n. v. Orleans Parish Sch. Bd., Id.
[6] Evaluation procedures also fall within the retained rights deemed not subject to arbitration under Paragraph 7:3.5(b) of the contract as quoted above.