689 So.2d 645 (1997)
ORLEANS PARISH SCHOOL BOARD
v.
UNITED TEACHERS OF NEW ORLEANS.
No. 96-CA-0984.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1997.
Writ Denied April 25, 1997.
*646 Franklin V. Endom, Jr., James A. Stapp, Polack, Rosenberg & Endom, New Orleans, for Orleans Parish School Board.
Larry Samuel, Jay Alan Ginsberg, Rittenberg and Samuel, New Orleans, for United Teachers of New Orleans.
Before BYRNES, ARMSTRONG and JONES, JJ.
BYRNES, Judge.
The Orleans Parish School Board ("School Board") appeals the trial court's judgment which denied the School Board's petition to vacate the arbitrator's award. We affirm.
Jeffrey Kadish, a member of the United Teachers of New Orleans ("UTNO"), filed a grievance on July 13, 1993, claiming that he was wrongfully denied a transfer to fill a teaching vacancy at Edna Karr Magnet School ("Edna Karr"). He claimed that he was the applicant with the most seniority, and the two vacancies at Edna Karr were filled with less seniored applicants in violation of the Collective Bargaining Agreement ("Agreement") between the School Board and UTNO. The grievance was submitted directly to the Personnel Department of the School Board, which forwarded the grievance to the Associate Superintendent for Area 1 schools. After a hearing before the Executive Assistant to the Superintendent, UTNO filed a notice of appeal to arbitration on behalf of Kadish.
Opposing the appeal to arbitration, the School Board contended that: (1) Kadish and UTNO failed to adhere to the strict procedural requirements for filing an appeal of a grievance as provided in the Agreement; (2) the appeal put at issue matters not raised in the original grievance; (3) there was no violation of any section of the Agreement; and (4) the arbitrator could decide only whether there was a violation of the Agreement, but had no authority to order the School Board to provide Kadish with a position at Edna Karr.
After an American Arbitration Association hearing, the arbitrator sustained the grievance, ordered that the grievant be placed in a teaching position at the Karr School consistent with the original request for voluntary transfer and the remedy requested in the grievance, and noted that the arbitrator would retain jurisdiction over the matter pending implementation of the remedy.
The School Board filed suit in civil district court, and after a hearing, in its judgment of January 30, 1996, the district court denied the School Board's petition to vacate the arbitration award. The School Board's appeal followed.
On appeal the School Board contends that the trial court erred in failing to find that: the arbitrator exceeded his limited power under the Agreement by usurping the non-delegable authority of the School Board to transfer and reassign its teachers and employees; and the arbitrator's award lacked *647 finality and definiteness because it retained jurisdiction over the matter.[1]
Arbitration awards are presumed valid because of a strong public policy favoring arbitration in Louisiana. Colchoneria Jiron, S.A. v. Blumenthal Print Works, Inc., 629 So.2d 1288 (La.App. 4 Cir.1993), writ denied 94-0145 (La.3/11/94), 634 So.2d 391. A reviewing court cannot review the merits of an arbitrator's decision; the grounds for judicial inquiry under arbitration law are whether a valid arbitration agreement exists, and whether it has been complied with. La. R.S. 9:4201 et seq.; Landry v. William B. Reily & Co., Inc., 524 So.2d 750 (La.App. 3 Cir.1988).
The School Board asserts that the arbitrator exceeded his authority under La. R.S. 9:4210(D).[2] The School Board contends that by mandating that Kadish be placed in a position at Edna Karr, the arbitrator effectively usurped the School Board's management authority. The School Board claims that the School Board's management authority under La. R.S. 17:81 to transfer or reassign its teachers cannot be delegated to any other non-governmental person or agencies. The School Board avers that the dispute is not an arbitrable "grievance" according to the Agreement. Section 7:8.9(c) provides that, "no matter will be considered arbitrable unless it ... constitutes a grievance under the definition of a grievance set forth in 7:2...." Section 7:2(d) excludes from the definition of grievance, "a complaint by any certified personnel occasioned by ... lack of appointment to ... any position for which tenure is either not possible or not required."
The School Board refers to United Teachers of New Orleans v. Orleans Parish School Board, 348 So.2d 232 (La.App. 4 Cir.1977), appeal dismissed, 355 So.2d 899 (La.1978),[3] in which this court held that arbitration could not be invoked because the School Board could not delegate its authority by contract to implement teacher evaluation procedures through negotiations with the Union because the School Board cannot delegate any power given it by the legislature to other non-governmental agencies or persons as part of its statutory authority to hire and fire teachers. However, that case involved teacher evaluation procedures and did not take into account La. R.S. 17:100.4, which was first promulgated in 1983. Although La. R.S. 17:81 gives the School Board the authority to assign teaching positions, La. R.S. 17:100.4 [4] *648 requires each school board to adopt rules, regulations, and policies necessary to establish a grievance procedure that shall guarantee a fair hearing by school employees, including teachers.
Section 7:2(d) of the Agreement excludes from the definition of grievance, "a complaint by any certified personnel occasioned by ... lack of appointment to ... any position for which tenure is either not possible or not required." However, that section conflicts with La. R.S. 17:100.4. The School Board cannot circumvent La. R.S. 17:100.4 by declaring that a complaint by certain personnel cannot be classified as a grievance. The School Board did not adopt a separate grievance process for those employees; moreover, the School Board agreed to arbitration as part of the grievance procedure in the Agreement. An effective grievance procedure is provided by arbitration only if the arbitrator has the authority to order the School Board to provide the remedy to the grievant. Without the authority of the arbitrator to order a remedy, each claimant would have to take his/her claim to court, which would defeat the purpose of arbitration, which is to resolve contract disputes without resorting to litigation in court. State, Through Div. of Admin. v. Algernon Blair, Inc., 415 So.2d 612 (La.App. 3 Cir.1982). The School Board's position would circumvent the arbitration process and the operation of seniority in the case of voluntary transfers.
Article 7:8.10 of the Agreement defines the authority of the arbitrator as follows:
The decision of the arbitrator as set forth shall be restricted to a determination of whether or not there has been a violation of the AGREEMENT as alleged in the written grievance. He shall limit himself to the issues submitted to him in the grievance and shall have no authority in any case to add to, subtract from, or alter in any way any provision of this AGREEMENT. The decision of the arbitrator shall be binding.
The School Board argues that Section 7:8.10 of the Agreement limits the arbitrator's authority only to find there has been a violation, and the arbitrator "shall have no authority in any case to add to, subtract from or alter in any way any provision of this agreement."
However, the provision does not mean that the arbitrator cannot provide a remedy but means that the arbitrator cannot make a determination or order a remedy for anything outside of the Agreement.
The School Board has the power to submit to collective bargaining with its employees. Louisiana Teachers' Ass'n v. Orleans Parish School Bd., 303 So.2d 564 (La.App. 4 Cir. 1974), writ denied, 305 So.2d 541 (La.1975). In the present case Section 7:8.9 of the Agreement provides in pertinent part:
In consideration of the decision of any questions involving arbitrability, it is the specific agreement of the parties that:
(b) In the consideration of whether a matter is subject to arbitration, a fundamental principle shall be that the BOARD retains all its rights to manage the school system, subject only to the express limitations set forth in this Agreement; it is understood that the parties have not agreed to arbitrate demands which challenge action taken by the BOARD in the exercise of any such retained rights, except where such challenge is based upon a violation of any *649 express limitation set forth in this AGREEMENT. [Emphasis added.]
In negotiating the Collective Bargaining Agreement, the School Board's authority is limited by the requirement of a grievance procedure under La. R.S. 17:100.4. The Agreement cannot circumvent La. R.S. 17:100.4 which legislatively requires that the School Board implement a grievance process. As part of the grievance procedure, the School Board agreed to submit its disputes to arbitration, to give the arbitrator the authority to hear the facts, interpret the contract, and apply the facts to his interpretation.
Although the School Board argues that the arbitrator had no authority to provide a remedy appropriate to his finding of a violation of the Agreement, it is significant that the School Board is silent on the question of where the claimant's remedy may be obtained. The effect of the School Board's reading of the Arbitration Agreement would be to provide a right without a remedy. If that were the intention of the parties, there would have been no need to draft the Arbitration Agreement. Moreover, the interpretation given by the School Board is only supportable, if at all, when Section 7:8.10 quoted by the School Board in its argument is taken out of context with the other provisions of the Agreement.
Furthermore, under Section 7:8 of the Agreement, "Step 4Arbitration" shows that the right to arbitration is considered to be the appellate level of the grievance procedure as a whole and that the "notice of appeal shall state ... the remedy sought...." Section 7:5 of the grievance procedure also refers to "the remedy sought." We do not believe that it was the intention of the parties to consider remedies during the preliminary stages of the grievance process but withhold remedy authority at the arbitration stage of the process, which is the final and highest level of the grievance process. It would be analogous to declaring that the district court and the court of appeal can grant a remedy but the Supreme Court cannot.
When placed in the context of the Agreement as a whole between UTNO and the School Board, the intention of the parties that the arbitration result in a remedy as well as a determination that the Agreement had been violated becomes clear. The language of the limitation in Section 7:8.10 quoted by the School Board was intended to limit the scope of the arbitrator's inquiry and right of remedy to violations of the Agreement and then to only those violations set forth in the grievance. Section 7:8.10 was not intended to deny the arbitrator the authority to grant a binding remedy where he found a violation of the agreement. The School Board has the statutory authority to assign teachers to teaching positions; however, that authority is limited by the statutory requirement of a grievance procedure resulting in the arbitration which provides a remedy.
Section 10.5 of the Agreement provides: "Voluntary transfers shall be granted to the most seniored certified applicant." Under the Agreement, the School Board agreed to a provision allowing seniority as the determining factor except in circumstances when: a less seniored applicant has superior educational experience and/or training under Section 10:5.1; the more seniored applicant is handicapped and the receiving school cannot accommodate the handicap under Section 10:5.2; the more seniored applicant does not possess the level of necessary educational attainment if the receiving school is accredited or in the process of accreditation under Section 10:5.3; or the more seniored applicant is not competent or willing to assume responsibility of coaching or directing a marching band if the vacancy advertised carried with it such a requirement under Section 10:5.4. These factors are not applicable in the present case. Based on the facts presented by the parties, the arbitrator acted within his powers by applying Section 10:5 of the Collective Bargaining Agreement.
In the present case the arbitrator has the authority to order a remedy, that is to sustain the grievance and order that the grievant be placed in a teaching position at the Karr School consistent with the grievant's original request for a voluntary transfer.
The School Board also claims that the arbitrator improperly executed his powers to make a final and definite award because the arbitrator retained jurisdiction pending implementation *650 of a remedy consistent with the award. We conclude that the arbitration award is final; however, incidental to its authority to order a remedy, the arbitrator retains limited jurisdiction to see that the arbitrator's ruling is implemented properly.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The School Board further claims that the grievant did not follow the proper procedures which are prerequisites to an appeal to arbitration. The Union points out that the School Board also did not follow proper procedures when it failed to notify the Union within 30 days that it believed the grievance to be arbitrable so that the School Board was precluded from raising the question of arbitrability at a later date under Section 7:8.1 of the Agreement. We agree with the arbitrator's reasoning that the parties by their actions in effect agreed to and acquiesced in certain inconsequential deviations from the prescribed procedure, some of which were dictated by practical necessity.
[2] La. R.S. 9:4210 provides in pertinent part:

Sec. 4210. Motion to vacate award; grounds; rehearing
In any of the following cases the court in and for the parish wherein the award as made shall issue an order vacating the award upon the application of any party to the arbitration.
A. Where the award was procured by corruption, fraud, or undue means.
B. Where there was evident partiality or corruption on the part of the arbitrators or any of them.
C. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced.
D. Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
[3] The Louisiana Supreme Court dismissed the appeal because the case was moot where the collective bargaining agreement between the School Board and the Union had expired.
[4] By Acts 1985, No. 723, the amended statute was effective at the time that Kadish filed a grievance in July 1994. The statute provided:

Sec. 100.4. Grievance procedures for teachers and other school employees
A. Each city and parish school board shall adopt rules, regulations, and policies necessary to establish a grievance procedure that shall guarantee a fair hearing on grievances by any teacher or group of teachers or other school employees employed by such school board. However, prior to the adoption of the rules, regulations, and policies, each school board shall consult with the various professional organizations that represent teachers or other school employees in that school system regarding the grievance procedure.
B. In establishing a grievance procedure, each city and parish school board shall allow for representation in any school board action on the grievance by the teacher or teachers or other school employees voicing the grievance or by a representative or representatives of their choosing.
* * * * * *
D. Notwithstanding any provision of this Section or any other provision of law to the contrary, each city and parish school board may, in negotiating contracts with teachers, or other employees amend its rules, regulations, and policies relative to grievance procedures.