698 So.2d 429 (1997)
Raymond HOLMES and the United Teachers of New Orleans
v.
ORLEANS PARISH SCHOOL BOARD.
No. 95-CA-2451
Court of Appeal of Louisiana, Fourth Circuit.
July 9, 1997.
*431 Larry Samuel, Jay Alan Ginsberg, Rittenberg and Samuel, New Orleans, for Plaintiffs/Appellants.
Franklin V. Endom, Jr., Polack, Rosenberg & Endom, New Orleans, for Defendant/Appellant.
Before SCHOTT, C.J., and BARRY, BYRNES, PLOTKIN and MURRAY, JJ.
PLOTKIN, Judge.
Both parties to this appeal contest the trial court's disposition of their respective motions to vacate an arbitration award. The plaintiff/grievant, Raymond Holmes, and his representative agency, United Teachers of New Orleans (UTNO), claim that the award should be vacated because no mutual, final, and definite award was entered, as required by Louisiana law. The defendant Orleans Parish School Board (OPSB) claims primarily that the award should be vacated because the arbitrator exceeded her powers under the Collective Bargaining Agreement (CBA) between the OPSB and UTNO, an argument contested by Mr. Holmes and the UTNO. The OPSB claims alternatively that the award should be vacated for the same reasons urged by Mr. Holmes and the UTNO.

Facts
This grievance arises out of Mr. Holmes' suspension from his coaching responsibilities at Andrew J. Bell Junior High School during the 1988-89 school year. Mr. Holmes was informed of the suspension by the principal of the school on January 9, 1989. The reason for the suspension was Mr. Holmes' failure to distribute to members of his football team tickets to a Saints football game which had been donated by the Lupin Foundation. Mr. Holmes claims that his failure to distribute the tickets was caused by the unexpected illness of a close family member. The suspension was based on Mr. Holmes' failure to exercise his responsibilities as head football coach by failing to use good judgment because of Mr. Holmes' alleged duty to insure that certain students receive the tickets. Mr. Holmes claims that this particular "duty" was not a part of his job description.
The suspension was upheld by an OPSB Associate Superintendent on February 2, 1989. Further, the associate superintendent imposed a directive that Mr. Holmes be disqualified from serving as head coach or assistant coach for any sport in the Orleans Parish School System.
Thereafter, Mr. Holmes instituted a grievance procedure pursuant to the CBA between the OPSB and the UTNO. On April 6, 1989, the Employee Relations Officer for the New Orleans Public School System upheld the suspension, but reversed the associate superintendent's directive disqualifying Mr. Holmes from serving as a coach in any Orleans Parish public school, reinstating Mr. Holmes to the list of eligible coaches. Moreover, the Employee Relations Officer transferred Mr. Holmes' teaching assignment to a different school.
That ruling was appealed to arbitration, pursuant to the CBA, and referred to Diane Dunham Massey, an arbitrator selected through the American Arbitration Association. In ruling on the grievance, the arbitrator agreed that Mr. Holmes was responsible for distributing the tickets, but found that the OPSB's documents indicated that taking students to the Saints game was not part of his coaching duties. The arbitrator found specifically that the OPSB did not have just and sufficient cause for suspending Mr. Holmes from his coaching job. The arbitrator thereafter entered the following award:
The grievance is denied, in part, and sustained in part. The instant Suspension shall be reduced to a Written Warning. The Grievant shall be made whole for wages lost due to the Suspension from coaching during the 1988-89 school year. Absent an objection from either Party, the Arbitrator shall retain jurisdiction until the implementation of the Award.
Mr. Holmes and UTNO filed a Petition and Motion to Vacate the Arbitrator's Award, claiming that the arbitrator imperfectly executed her powers because no mutual, final, and definite award upon the subject matter was made. OPSB answered and reconvened, claiming that the award should be vacated because the arbitrator exceeded her powers as a matter of law and contract because her authority under the CBA was limited *432 to determining whether the OPSB violated the agreement. Alternatively, the OPSB asserted the same reasons for vacating the award as those urged by Mr. Holmes and UTNO.
On April 10, 1995, the trial court issued a judgment which stated as follows:
In this instant case, the plaintiff Raymond Holmes seeks to vacate an Arbitration Award. Defendant also seeks to vacate said Arbitration Award but for different reasons.
It is the opinion of this court that Arbitrator did not exceed her powers in setting forth a remedy. However, she exceeded her authority in retaining jurisdiction.
IT IS ORDERED that Arbitrator be denied retention of jurisdiction.
IT IS FURTHER ORDERED that Arbitrator's decision is upheld and plaintiff's request to vacate said decision is denied.

Judgment on the reconventional demand
After the rendition of the above judgment, on April 27, 1995, the OPBS filed an "Amended Judgment," which included only one sentence which had not been included in the trial court's original judgment: "IT IS FURTHER ORDERED that Defendant's reconventional demand be denied." In a letter accompanying the "Amended Judgment," the attorney for OPSB stated as follows:
The Court's Judgment and Reasons for Judgment in the above matter clearly deny plaintiff's request to vacate the arbitrator's award. We submit, however, that the Judgment does not clearly dispose of the School Board's Reconventional Demand for the same relief. We therefore request Your Honor to render judgment expressly disposing of that Reconventional Demand.
The trial court apparently refused to sign that amended judgment. A copy of the unsigned "Amended Judgment" is included in the record on appeal.
Nevertheless, on May 16, 1995, the OPSB filed a "Motion for Suspensive Appeal," despite its concerns that the trial court judgment had not expressly ruled on its reconventional demand. That motion was granted by the trial court on May 16, 1995. Holmes and UTNO do not contest the OPSB's right to file the appeal.
Moreover, we believe that the concerns of the OPSB's attorney are unwarranted. When read as a whole, the original judgment can only be interpreted to grant in part the OPSB's motion to vacate the arbitrator's award. The second and third paragraphs of the judgment address the issue of whether the arbitrator exceeded her powers in entering the award, an issue raised only by the OPSB at the trial court level. The trial court specifically found that the arbitrator did not exceed her powers in setting forth a remedy, although she did exceed her powers in retaining jurisdiction. Thereafter, the trial court ordered that the arbitrator be denied retention of jurisdiction. The effect of that paragraph of the judgment was to grant in part the motion to vacate filed by OPSB. The trial court then specifically denied the motion to vacate filed by Holmes and UTNO.
In its appeal to this court, the OPSB contests only the portion of the trial court's judgment which denied in part its motion to vacate, finding that the arbitrator did not exceed her authority in setting forth an award. Holmes and UTNO argue for the correctness of that portion of the trial court judgment in their appeal. The portion of the trial court judgment granting in part the OPSB's motion to vacate, denying the arbitrator's retention of jurisdiction has not been appealed by any party.

Motions to vacate arbitration awards
The grounds for granting motions to vacate arbitration awards are strictly limited by Louisiana law. Those limits are established by LSA-R.S. 9:4210, which provides, in pertinent part, as follows:
In any of the following cases the court in and for the parish wherein the award as made shall issue an order vacating the award upon the application of any party to the arbitration.
. . . . .
D. Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
*433 The OPSB claims that the award should be vacated for both of the reasons set out in LSA-R.S. 9:4210(D), while Mr. Holmes and UTNO claim the award should be vacated only because the arbitrator so imperfectly executed her powers that a mutual, final, and definite award was not made.
The Louisiana Supreme Court has acknowledged that principles of federal labor law apply to suits alleging a breach of a CBA. Bates v. Foremost-McKesson, Inc., 392 So.2d 389 (La.1980). Although the issue in Bates was different from the issue in the instant case, the principles enunciated in that decision have previously been applied to a suit seeking vacation of an arbitrator's award based on allegations that the arbitrator exceeded his authority under the CBA. See Christy v. International Paper Co., 478 So.2d 578 (La.App. 2d Cir.1985), writ denied, 481 So.2d 616 (La.1986). Thus, we will consider federal law and jurisprudence in deciding the instant controversy.

Authority of the arbitrator
In the instant case, the OPSB claims that upholding the arbitrator's decision would effectively allow a private individual to exercise a nondelegable responsibility given to the OPSB to supervise and discipline its employees. The effect of a CBA on the function of management has been described as follows:
Collective bargaining agreements regulate or restrict the exercise of management functions; they do not oust management from the performance of them. Management hires and fires, pays and promotes, supervises and plans. All these are part of its function, and absent a collective bargaining agreement, it may be exercised freely except as limited by public law and by the willingness of employees to work under the particular, unilaterally imposed conditions.
United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).
Moreover, despite the fact that arbitration as a means of settling labor disputes is highly favored in both Louisiana law and federal law, the powers of an arbitrator are strictly limited, as explained by the following excerpt from the United States Supreme Court's decision in United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960):
[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.
Id. at 597, 80 S.Ct. at 1361.
However, the United States Supreme Court has stressed that the deference to be given to an arbitrator's decision is great, stating as follows:
[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.
United Paperworkers International Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987).
Thus, the question to be answered is "whether the arbitrator's award is derived in some rational way from the collective bargaining agreement." Christy, 478 So.2d at 580-81. An arbitrator's decision is to be "accorded considerable judicial deference to the extent it touches the merits of the controversy"; however, his jurisdiction is nevertheless "shaped by the underlying collective bargaining agreement." Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Asso., 889 F.2d 599, 602 (5th Cir.1989), cert. denied sub nom, District 2 Marine Engineers Beneficial Asso. v. Delta Queen Steamboat Co., 498 U.S. 853, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990).
Specifically, concerning the imposition of remedies by arbitrators, the United States Supreme Court requires that such remedies be upheld "where it is contemplated that the arbitrator will determine remedies for contract *434 violations that he finds." Misco, 484 U.S. at 38, 108 S.Ct. at 371. "Normally, an arbitrator is authorized to disagree with the sanction imposed for employee misconduct." Id. at 42, 108 S.Ct. at 372. This rule is based on the fact that an arbitrator "is to bring his informed judgment to bear in order to reach a fair solution of the problem," especially "when it comes to formulating remedies." Id., quoting Enterprise Wheel, 363 U.S. at 597, 80 S.Ct. at 1361. Thus, remedies imposed by arbitrators should be upheld "unless they demonstrate a `clear infidelity' to the agreement itself." General Telegraph Co. v. Communications Workers, 648 F.2d 452, 457 (6th Cir.1981). "Thus, if the arbitrator can be said to be construing or applying the agreement between the parties," his award must be upheld. Amax Coal Co. v. United Mine Workers of America, 92 F.3d 571, 575-76 (7th Cir.1996). Only where there is "no possible interpretive route" to the arbitrator's award may it be overturned. Id., quoting Arch of Illinois v. District 12, United Mine Workers, 85 F.3d 1289, 1293 (7th Cir.1996).
Only when a court finds that an arbitrator "must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract" may it hold that the award does not "draw its essence from the collective bargaining agreement." Ethyl Corp. v. United Steelworkers of America, 768 F.2d 180, 184-85 (7th Cir.1985), cert. denied, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986), quoting Young Radiator Co. v. International Union, United Auto. Workers, 734 F.2d 321, 325 (7th Cir.1984). Generally, the federal courts have held that an arbitration award is considered to have drawn its essence from the CBA unless one of the following things is true:
1. The remedy "conflicts with the agreement's express terms."
2. The remedy "imposes additional requirements that the agreement does not expressly provide."
3. The remedy "cannot be rationally derived from the agreement's terms."
4. The remedy "is based on general considerations of fairness and equity rather than on the precise terms of the agreement."
Cincinnati Die Casting, Inc., 807 F.Supp. at 70.
However, the analysis does not end there. Even if the agreement itself does not specifically give the arbitrator power to impose a remedy, the arbitrator does not necessarily exceed his authority by doing so. The United States Fifth Circuit Court of Appeal has stated as follows:
The scope of an arbitrator's authority, however, is not always controlled by the collective bargaining agreement alone. That agreement constitutes merely a promise to arbitrate.... Before arbitration can actually proceed, it is necessary for the parties to supplement the agreement to arbitrate by defining the issue to be submitted to the arbitrator and by explicitly giving him authority to act.... This statement of issues and designation of the arbiter is frequently incorporated into a separate document, called a submission agreement.
. . . . .
[O]nce the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority....
The parties may act formally and enter into a written submission agreement or they may merely ask the arbiter to decide the written grievance as it has been posed in their conciliation efforts. When they do so, they have in effect empowered him to decide the issues stated in the grievance. The grievance itself becomes the submission agreement and defines the limits of the arbitrator's authority. Arbitration is a matter of contract, ... but the initial contract to arbitrate may be modified by the submission agreement or grievance.
Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, 611 F.2d 580, 583-84 (5th Cir.1980) (citations omitted). See also Mobil Oil Corporation v. Oil, Chemical *435 & Atomic Workers International Union, 777 F.Supp. 1342 (E.D.La.1991).
In fact, the Mobil Oil case takes this principle even further. In that case, the court noted that the grievance which initiated the action made "a quite general charge." Id. at 1347. Thus, the court looked to the opening statements given by the parties, as well as testimony and argument presented during the arbitration hearing, to determine the issue submitted to the arbitrator. Id. The court held as follows:
When there is no formal submission agreement, the arbitrator is empowered to decide the issue under review, and that decision is due the same deference as his interpretation of the collective bargaining agreement (CBA). The only exception to that is if he can be said to be operating outside the CBA.
Id. at 1349.
Thus, the first question to be asked in this case is whether the CBA between the OPSB and the UTNO gave the arbitrator power to impose the remedy she chose. If the agreement gave the arbitrator that power, then her imposition of the remedy did not exceed her authority under the agreement. However, if the agreement did not give the arbitrator the power to impose the remedy, the analysis does not end there. The second question to be asked is whether the submission agreement to the arbitrator, orin the absence of a submission agreementthe grievance itself, gave the arbitrator the power to impose a remedy. In that case, the controversy "turns on the question of what exactly was submitted to the Arbitrator." Mobil Oil Corp., 777 F.Supp. at 1342. Under the Mobil Oil case, this court may even look to the transcript of the arbitration hearing in order to determine the exact issues submitted to the arbitrator. Courts should resolve any doubt "in favor of the arbitrator's authority to award a particular remedy." Id. at 1344, quoting Willoughby Roofing & Supply v. Kajima International, Inc., 776 F.2d 269, 270 (11th Cir.1985).
Thus, in determining whether the arbitrator exceeded her authority by imposing a remedy in the instant case, this court must look first to the CBA between the OPSB and UTNO. The Statement of Cooperation between the two parties is found at § 7:1, which provides as follows:
The BOARD and the UNION are committed to cooperatively resolve problems. The BOARD and the UNION agree that they will use their best efforts to encourage the fair and prompt settlement of disagreements which may arise under the terms and conditions of this Agreement.
The authority of the arbitrator is controlled by § 7:8.8, which provides as follows:
The decision of the arbitrator as set forth shall be restricted to a determination of whether or not there has been a violation of the AGREEMENT as alleged in the written grievance. He shall limit himself to the issues submitted to him and shall have no authority in any case to add to, subtract from, or alter in any way any provision of this AGREEMENT....
Because the controversy involved in this case centers around disciplinary action taken against an employee, § 13:1:1 of the CBA is also relevant. That section provides as follows:
No member of the bargaining unit shall be disciplined, given a written reprimand or discharged except for just and sufficient cause. Discipline is defined as the imposition of a sanction which results in a demonstrable loss or damage to a member of the unit.
The CBA does not contain any specific provisions governing the exact sanctions to be imposed for specific actions taken by employees. The CBA simply requires that "just and sufficient cause" support any disciplinary action. Thus, the CBA itself does not expressly give the arbitrator the authority to impose the remedy she chose in the instant case.
However, the next step of the inquiry is to consider the issues presented to the arbitrator in the submission agreement, or, in the absence of a submission agreement, in the grievance itself. In the instant case, the record indicates that the parties did not prepare a formal submission agreement. However, Attachment # 3 to the grievance filed *436 by Mr. Holmes, relative to the remedy sought, states as follows:
1) I be reassigned head football, basketball and baseball coach at the Andrew J. Bell Jr. High School, effective this school year.
2) I be paid all lost wages in keeping with the coaches pay schedule described in the OPSB/UTNO Agreement, as a result of my suspension.
3) I be taken off the coach's ineligibility list in the school district as directed by John Smith, Area III Superintendent in his February 13, 1989 letter carbon copied to Personnel.
4) Expungement of all documents relative to this matter.
Under the applicable federal caselaw, the OPSB and UTNO, by allowing the grievance to go to arbitration without preparing a formal submission agreement, they "in effect empowered [the arbitrator] to decide the issues stated in the grievance." Piggly Wiggly, 611 F.2d at 584. The grievance itself became the submission agreement and defined the limits of the arbitrator's authority. Id. "Arbitration is a matter of contract, ... but the initial contract to arbitrate may be modified by the submission agreement or grievance." Id.
Thus, the arbitrator in the instant case was given the authority to impose a remedy as outlined by the grievance, which specifically requested reassignment as a coach and reinstatement of lost wages. Further, the arbitrator had power under the CBA to determine whether just and sufficient cause existed for the OPSB's actions against Mr. Holmes. Under the grievance, as quoted above, the arbitrator therefore had the authority to impose every portion of the remedy she chose, except for requiring the OPSB to issue a written warning. The arbitrator was not authorized to impose that portion of the remedy either by the provisions of the CBA or by the grievance. The trial court was clearly wrong in failing to vacate that portion of the arbitrator's award. Accordingly, we amend the trial court judgment granting in part the motion to vacate the arbitration award filed by the OPSC to further vacate the portion of the arbitrator's award which required the OPSB to issue a written warning.
This result is consistent with the federal caselaw in which the courts found that an arbitrator exceeded his authority in imposing a specific remedy. In most of those cases, the court found that the arbitrator violated the provisions of the applicable CBA by imposing remedies which were inconsistent with his findings of fact. See, i.e., E.I. DuPont de Nemours & Co. v. Local 900 of the International Chemical Workers Union, 968 F.2d 456 (5th Cir.1992) (arbitrator fashioned a remedy other than discharge after finding just cause for termination); Delta Queen Steamboat Co., 889 F.2d 599 (arbitrator ordered reinstatement after finding vessel captain was grossly careless); Container Products, Inc. v. United Steelworkers of America, 873 F.2d 818 (5th Cir.1989) (arbitrator ordered reinstatement after finding just cause for dismissal of employee). In another case, the arbitrator lacked authority to impose the remedy because he imposed a monetary award for time extending beyond the expiration date of the CBA. Cincinnati Die Casting, 807 F.Supp. 68. Moreover, the court in Bruno's, Inc. v. United Food & Commercial Workers International Union, 858 F.2d 1529 (11th Cir.1988) found that the arbitrator lacked authority to create a new rule to replace a rule invalidated as unreasonable. The facts of the instant case are thus distinquishable from those of the cases cited.
Performance of arbitrator's duties
The OPSB, as well as UTNO and Mr. Holmes, argue that the arbitrator's agreement should be set aside under the second ground for vacation of an arbitrator's award established by LSA-R.S. 9:4210(D)that the arbitrator so imperfectly executed her powers that a mutual, final, and definite award upon the subject matter submitted was not made. Generally, under the relevant caselaw, a final and definite award "must both resolve all the issues submitted to arbitration, and determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award." Puerto Rico Maritime Shipping *437 Authority v. Star Lines, Ltd., 454 F.Supp. 368, 372 (S.D.N.Y.1978).
In making this alternative argument, the OPSB assigns three reasons why the award made in this case is not "mutual, final, and definite": (1) the arbitrator retained jurisdiction; (2) the arbitrator ruled that the suspension shall be reduced to a written warning, but did not provide the specifics to be included in the warning, and (3) the award does not state the amount of wages lost which must be paid in order to make Mr. Holmes whole as a result of the suspension from coaching.
We find no merit in any of the points raised by the OPSB on this issue. Concerning the first point, the fact that the arbitrator retained jurisdiction to assure that the award was fulfilled does not make the award less "mutual, final, and definite." Moreover, the trial court reversed that portion of the arbitrator's decision; that reversal has not been appealed. Concerning the second point, we have already vacated the portion of the award requiring the OPSB to issue a written warning to Mr. Holmes in lieu of suspension.
Concerning the third point, the arbitrator ordered that Mr. Holmes "be made whole for wages lost due to the Suspension from coaching during the 1988-89 school year." The fact that the arbitrator did not calculate the exact amount of lost wages to be paid Mr. Holmes, however, does not mean that the award is not "mutual, final, and definite." The calculation can easily be accomplished by the OPSB; it should simply subtract the amount Mr. Holmes was actually paid during 1988-89 from the amount he would have been paid had he not been suspended from his coaching position and pay Mr. Holmes the balance. The fact that the arbitrator did not make the calculation does not require vacation of the award when the calculation can easily be made.
Conclusion
Accordingly, the trial court judgment denying the motion to vacate filed by Holmes and UTNO is affirmed. The trial court judgment granting the motion to vacate filed by OPSB in part is amended to vacate that portion of the award requiring the OPSB to issue a written warning to Mr. Holmes in lieu of a suspension. In all other respects, the trial court judgment is affirmed.
VACATED IN PART; AFFIRMED IN PART.
SCHOTT, C.J., concurs in the result.
BYRNES, J., concurs with reasons.
MURRAY, J., concurs.
BARRY, J., dissents in part.
SCHOTT, Chief Judge, concurring in the result:
The first issue raised by OPSB is the failure of the trial court to include in the judgment an explicit disposition of the reconventional demand. When the trial court's judgment and reasons for judgment make no mention of the reconventional demand this court presumes that the reconventional demand was dismissed. Campagna v. Smallwood, 428 So.2d 1343, 1347 (La.App. 4th Cir. 1983), written by J. Barry. A trial court's failure to adjudicate an incidental demand, when rendering judgment on the merits of the principal demand, is tantamount to denying it. Stringer v. Todd, 305 So.2d 696, 700 (La.App. 4th Cir.1974). In these cases the reconventional demands were dismissed in their entirety. In the present case the trial court granted a portion of the relief sought in OPSB's reconventional demand, but dismissed it insofar as it sought to vacate the entire award. Thus, Judge Plotkin's concurring opinion reaches the correct result on this issue.
As I understand OPSB's position it contends that the only question before the arbitrator was whether it violated the collective bargaining agreement by suspending him for mishandling the Saints tickets. It asserts that the arbitrator exceeded her authority when she ordered the school board to pay him for the time he was wrongfully suspended and to issue a written warning to him.
The essence of Holmes' grievance was that he was wrongfully suspended for a year; he *438 wanted his salary for that time. The underlying factual issue was whether he did anything wrong. The arbitrator had to consider the evidence to determine whether he was guilty of mishandling the tickets before considering whether he was wrongfully suspended. In effect the arbitrator concluded that the suspension was wrong because the underlying facts did not provide a sufficient basis for the imposition of a one year suspension. This constituted a violation by OPSB of the collective bargaining agreement so that Holmes had a legitimate grievance.
Once the one year suspension was held to be a violation the payment of his salary for that time was a given. Even if the arbitrator hadn't said it, OPSB would have owed Holmes his compensation and he could have availed himself of the provisions of R.S. 9:4214 to collect it.
As to the written warning issue, this was an award upon a matter not submitted to the arbitrator. Consequently, we modify the award to delete this provision pursuant to R.S. 9:4211(B).
Accordingly, the judgment of the trial court is amended and the arbitrator's award is modified to delete the requirement of a written warning. The judgment otherwise is affirmed.
BYRNES, Judge, concurring with reasons.
I respectfully concur with the majority solely for the purposes of clarification and simplication. The Orleans Parish School Board argues that the arbitrator was without the authority to grant a remedy based upon the following language found in the Collective Bargaining Agreement:
The decision of the arbitrator as set forth shall be restricted to a determination of whether or not there has been a violation of the AGREEMENT....
This exact same argument by the School Board was rejected very recently by this Court in Orleans Parish School Board v. United Teachers of New Orleans, 96-CA-0984 (La.App. 4 Cir. 2/12/97), 689 So.2d 645, writ denied. In that case this Court stated at page 6 that "... the provision does not mean that the arbitrator cannot provide a remedy but means that the arbitrator cannot make a determination or order a remedy for anything outside of the Agreement." Orleans Parish School Board, 689 So.2d at p. 648.
BARRY, Judge, dissenting in part.
The only judgment before this Court is the April 10, 1995 judgment which denies the motion to vacate filed by Holmes and UTNO. The district court's reasons for judgment only refer to plaintiffs' motion to vacate. The trial court never rendered judgment on the Orleans Parish School Board's reconventional demand which requested that the arbitration award be vacated.[1]
The School Board notes the lack of a judgment on its reconventional demand and the Board's letter to the district court asking that a judgment be rendered. According to the brief filed by UTNO and Holmes, both parties' motions to vacate were denied. However, the majority opinion concludes, without basis, that the trial court granted OPSB's reconventional demand in part, not a flat denial. The record contains an unsigned amended judgment denying both the plaintiffs' motion to vacate and the School Board's reconventional demand. The record has no judgment from which the School Board can appeal. The majority has no basis to conclude "that the effect of ... the judgment was to grant in part the motion to vacate filed by OPSB." It is not the function of this Court to guess what the district court intended.[2]
I dissent from that part of the opinion.
NOTES
[1] The record contains a narrative of proceedings held on October 23, 1992 because a transcript was not available. According to the narrative signed by counsel for all parties, on that date the trial court ruled from the bench, vacated the arbitrator's award because both sides sought to vacate the award, and returned the grievance to arbitration before another arbitrator. Both sides appeal and argue that this Court should reverse the trial court's denial of the motion to vacate the arbitrator's award and remand the grievance for arbitration.
[2] Counsel for the School Board argued to this court that we should not "draw any inference" from the trial court's refusal to act on the reconventional demand. To guess at the intent "would create chaos."