*International Brotherhood of Electrical Workers Local Union 300 v. City of Winooski*, No. 789-8-14 Cncv (Toor, J., Apr. 29, 2015).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION 300 and JASON NOKES<br> Petitioners<br><br>v.<br><br>CITY OF WINOOSKI<br> Respondent | Docket No. 789-8-14 Cncv |

## RULING ON MOTION TO VACATE ARBITRATION AWARD

Jason Nokes was criminally charged in 2013 with firing his service weapon and striking a suspect while responding to a call in the course of his duty as a police officer for the City of Winooski. Nokes's union, the International Brotherhood of Electrical Workers Local 300, asked the City of Winooski to pay for Nokes's criminal defense attorney's fees. The Union argued that § 15.5(C) of the Collective Bargaining Agreement obligated the City to pay for the costs of "all litigation," civil or criminal, arising from an employee's course of employment. The City denied the Union's request at each step of the three-step grievance procedure outlined in the Agreement. The parties then engaged in arbitration and the arbitrator upheld the City's denial, concluding that § 15.5(C) of the Agreement obligated the City to pay an employee's legal fees only to the extent of its insurance coverage for such benefit. The City's insurance policy does not cover criminal defense costs. Nokes and the Union move to vacate the arbitration award on the ground that the arbitrator exceeded his powers by considering the insurance policy.

## Discussion

"The standard of review of an arbitration award by the superior court . . . is very limited. 'Vermont has a strong tradition of upholding arbitration awards whenever

possible.'" Vt. Build, Inc. v. Krolick, 2008 VT 131, ¶ 13, 185 Vt. 139 (citation omitted). "The trial court can . . . vacate an arbitrator's award only pursuant to statutory grounds or if the parties are denied due process." Id. (internal quotation marks omitted). The statutory ground for vacatur that is invoked in this motion is that the arbitrator exceeded his powers. *See* 12 V.S.A. § 5677(a)(3).[1] To find that the arbitrator exceeded his powers, the court must determine "whether the arbitrator had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator correctly decided that issue." Krolick, 2008 VT 131, ¶ 17 (internal citations, brackets, and quotation marks omitted). "[T]he vacatur ground that the arbitrator exceeded his powers does not authorize the court to review the legal or factual conclusions of the arbitrator." Id.

Petitioners cite three reasons why the arbitrator allegedly exceeded his powers by considering the insurance policy in his decision: (1) because he thus improperly modified the Agreement in violation of § 17.14; (2) because insurance was not an arbitrational issue; and (3) because insurance was outside the scope of questions presented for review.

Concerning their first point, Petitioners argue that by considering insurance, "the arbitrator did not merely interpret an ambiguous provision but instead conflated the obligation of the City to provide for the costs of legal defense for its employees with its separate obligation to obtain sufficient insurance coverage to meet this obligation." Pet'rs' Reply Mem. at 4. Petitioners contend that the arbitrator thus violated the "no modification" provision in § 17.14 of the Agreement.

"Under Vermont law, an arbitrator's authority finds its source in contract." R. E. Bean Constr. Co. v. Middlebury Assocs., 139 Vt. 200, 209 (1980). "An arbitrator must

---

[1] Both sides appear to agree that the Vermont Arbitration Act governs here, not the Federal Arbitration Act.

act within the scope of his or her delegated authority . . . ." O'Rourke v. Lunde, 2014 VT 88, ¶ 44. Section 17.14 authorizes the arbitrator to "interpret specific provisions" of the Agreement, but states that he "shall have no power . . . to add to or subtract from or to modify and extend any of the terms of this Agreement." The arbitration award therefore must "fall[] squarely within the terms of the agreement." Orleans Town Sch. Dist. v. Chapdelaine, No. 2000-370, 2001 WL 36141070, at *4 (Vt. Nov. Term 2001).

Here, the arbitrator had to decide whether § 15.5(C) in the Agreement obligated the City to pay for Nokes's criminal defense costs. Section 15.5(C) states the following:

> The City agrees to pay the full cost of legal representation for all litigation arising from an employee's course of employment. The City agrees to maintain an insurance policy in the amount of one million dollars ($1,000,000) to cover the cost of such representation and subsequent claims.

The arbitrator determined that § 15.5(C) is ambiguous since it does not expressly state that the City would pay for both civil and criminal defense costs, and that the first sentence of that section "cannot be read independently and without reference to the second sentence." Arb. Award at 15 (Ex. 1 to Pet'rs' Pet. to Vacate). Reading the two sentences together, the arbitrator concluded that "the City did not in and of itself ever promise to pay the costs of legal representation; it only promised to pay for such legal representation to the extent that it could obtain insurance coverage for such benefit." Id. at 16. Because the City's insurance policy does not cover criminal defense costs, the arbitrator denied Petitioners' request for payment of legal fees.

The arbitrator also deemed it important that the City's insurance policy has never covered criminal defense costs and that no one has ever brought a claim under § 15.5(C). Moreover, the arbitrator found "no evidence that the City was ever questioned about the extent of its insurance coverage or that it was ever brought to City's attention that the

3

insurance coverage was in any way unacceptable." Id. He then concluded that the "prior exclusive bargaining representative had acquiesced to the fact that reimbursement for criminal litigation fees were not intended to be covered . . . ." Id. He also concluded that "the City cannot be faulted for maintaining the same liability coverage," since the matter was not raised during contract negotiations with the Union in 2012. Id. at 16–17.

"Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 (2013) (internal citation and quotation marks omitted). "[T]he sole question for [the court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." Id. (parentheses in original).

As a practical matter, though, it is not always immediately clear what constitutes "interpretation" as opposed to "modification" of a contract's terms. See Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261, 950 F.2d 95, 100 (2d Cir. 1991) (describing the distinction as "tenuous"); Ethyl Corp. v. United Steelworkers of Am., 768 F.2d 180, 185 (7th Cir. 1985) ("[O]ften it will be unclear whether the arbitrator has interpreted the contract or relied on some private notion of equity . . . ."). Even so, it is well accepted that the "arbitrator may not ignore the plain language of the contract." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). Accord United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960) ("[A]n arbitrator is confined to interpretation and application of the [contract]; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement."); Inter-City Gas Corp. v. Boise Cascade Corp., 845

F.2d 184, 187 (8th Cir. 1988) ("Although the arbitrator may interpret ambiguous language, the arbitrator may not disregard or modify unambiguous contract provisions."). "If the arbitrator's award has deviated from the plain meaning of a labor contract provision, it must find support in the contract itself or in prior practices demonstrating relaxation of the literal language." NF&M Corp. v. United Steelworkers of Am., 524 F.2d 756, 759 (3d Cir. 1975). "[I]t is the duty of the courts to ascertain whether the arbitrator's award is derived in some rational way from the collective bargaining agreement." Detroit Coil Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Lodge # 82, 594 F.2d 575, 579 (6th Cir. 1979).

Petitioners argue that the award is not rationally derived from the contract; in their view, the arbitrator modified a clear contract provision "to suit his own notion of the balancing of the equities." Pet'rs' Pet. at 9. The City responds that the arbitrator did only what the parties had asked: he "determined that section 15.5(C) of the [Agreement] was ambiguous and interpreted this ambiguity by looking to the language of the specific provision as a whole . . . and the past practices of the parties." City's Mem. at 5. Petitioners ask the court to determine whether the arbitrator interpreted an ambiguous provision or whether he improperly modified an unambiguous provision. The City insists that the court cannot review this issue due to the narrow scope of judicial review.

"It is well established that the power to construe ambiguous contract provisions lies with the arbitrator." Morgan Servs., Inc. v. Local 323, Chi. & Cent. States Joint Bd., Amalgamated Clothing & Textile Workers Union, 724 F.2d 1217, 1221 (6th Cir. 1984). It is also well established that a court cannot examine the merits of an arbitration award. See Krolick, 2008 VT 131, ¶ 17 ("[T]he vacatur ground that the arbitrator exceeded his powers does not authorize the court to review the legal or factual conclusions of the

5

arbitrator."); Enter. Wheel & Car Corp., 363 U.S. at 596 ("The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements."); United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 585 (1960) (a court "should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement"). However, the deference to which an arbitrator is entitled is not cause to "simply ignore the arbitral opinion." Harry Hoffman Printing, 950 F.2d at 99. *Accord* Ethyl Corp., 768 F.2d at 187 ("This is not to say that simply by making the right noises—noises of contract interpretation—an arbitrator can shield from judicial correction an outlandish disposition of a grievance.").

Moreover, at least one court has rejected the argument that courts cannot review an arbitrator's finding of ambiguity in the contract, explaining that:

> Insofar as the [City] argues that the construction of ambiguities in collective bargaining agreements is a task for arbitrators and not for courts, it is correct. But insofar as it argues that the threshold determination that a given provision is ambiguous is *exclusively* a question for the arbitrator, it errs. If the [City's] position were accepted, then the rule that arbitrators cannot ignore or modify unambiguous contract provisions would be wholly nugatory: an arbitrator could easily circumvent this rule by making a finding that a provision is ambiguous when in fact it is not. The initial question of whether an ambiguity exists is amenable to judicial review to the same extent and in the same manner as other decisions of arbitrators. That is, the determination that an ambiguity exists will be reviewed to determine whether this decision draws its essence from the agreement. . . . This is to be contrasted to the situation in which an arbitrator adopts one of several possible conflicting constructions of an unclear provision in a collective bargaining agreement. In the latter situation, courts will rarely, if ever, substitute their own judgment for that of the arbitrator.

Morgan Servs., 724 F.2d at 1222 n.8 (italics in original).

Thus, where, as here, a party asserts that the arbitrator found ambiguity where none existed, the court "must examine the award to determine if it is fundamentally at

6

odds with the collective bargaining agreement . . . ." Id. at 1220 (internal citation omitted).

Section § 15.5(C) provides that the City "agrees to pay the full cost of legal representation for *all litigation* arising from an employee's course of employment" (emphasis added). The parties disagreed on whether this provision includes both civil and criminal litigation. The arbitrator concluded that the provision is ambiguous because it does not state expressly that the City would pay "for any and all matters arising out of the course of a police officer's employment." Arb. Award at 15.

However, a contract provision is ambiguous only when "it is reasonably or fairly susceptible of different constructions. It has been aptly said the mere fact that the parties have differed as to the meaning of the terms of a [contract] does not make [those terms] ambiguous. Otherwise the mere assertion of ambiguity by a suing plaintiff would always result in a ruling of ambiguity." Town of Troy v. Am. Fid. Co., 120 Vt. 410, 418 (1958). "A determination as to whether ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous." City of Lincoln v. Neb. Pub. Power Dist., 636 N.W.2d 645, 655 (Neb. Ct. App. 2001).

The phrase "all litigation" in § 15.5(C) "must be given its ordinary meaning in the absence of evidence indicating that the parties to this contract intended to expand or otherwise deviate from that meaning." Detroit Coil, 594 F.2d at 580. "When a pivotal word is not defined . . . in the [contract] it is permissible for the court to take judicial notice of its meaning as given in standard works, such as dictionaries." Abraham v. Ins. Co. of N. Am., 117 Vt. 75, 80 (1951).

7

The term "all" means "each and every thing." The American Heritage Dictionary 94 (2d ed. 1982). *Accord* Choice Hotels Int'l, Inc. v. SM Prop. Mgmt., LLC, 519 F.3d 200, 210 (4th Cir. 2008) ("All means all."). "Litigation" means "[t]he process of carrying on a lawsuit." Black's Law Dictionary (9th ed. 2009) (Westlaw). A "lawsuit" or "suit" is "any proceeding by a party or parties against another in a court of law." Id. The term "action," its near-synonym, is defined as "a civil or criminal judicial proceeding." Id. The ordinary meaning of these words thus includes criminal litigation. The arbitrator cited no evidence that the parties meant to depart from the ordinary meaning of these words. It is well accepted that "[a]rbitrators may imply terms or fill gaps in an agreement, but a 'no modification' clause prohibits them from creating entirely new terms." Harry Hoffman Printing, 950 F.2d at 100. "A provision in a collective bargaining agreement cannot be treated as ambiguous and then ignored simply because it varies from the arbitrator's expectations." Morgan Servs., 724 F.2d at 1224.

Moreover, the arbitrator's conclusion that the City "only promised to pay for such legal representation to the extent that it could obtain insurance coverage for such benefit," Arb. Award at 16, finds no support in § 15.5(C). First, nowhere does this section say that the City has no duty to pay for its employees' litigation costs if it fails to obtain sufficient insurance. Second, the arbitrator's conclusion means that it is of no concern if the City ignores the contract and buys no insurance policy at all. In fact, the City would have an incentive to not buy insurance, if not having insurance merely meant it would not have to reimburse any legal fees. Finally, the arbitrator's conclusion effectively nullifies the first sentence of § 15.5(C), in which the City agreed to pay for the costs of "all litigation."

The arbitrator also considered the Agreement's prior history and application of § 15.5(C). "[P]ast practices may be considered when interpreting a collective-bargaining

agreement." In re Cole, 2008 VT 58, ¶ 15, 184 Vt. 64. *See also* Detroit Coil, 594 F.2d at 580 ("That an arbitrator can look for guidance beyond the express terms of the contract to the past application of that contract by the parties is without question."). However, if the "collective bargaining agreement answers the question submitted to the arbitrator in clear and unambiguous language, the arbitrator errs if he looks beyond the contract and uses extraneous considerations to render the contract's clear language ineffective." Morgan Servs., 724 F.2d at 1224.

Here, despite finding no prior history or application of § 15.5(C), the arbitrator concluded that the prior bargaining representative must have "acquiesced to the fact that reimbursement for criminal litigation fees were not intended to be covered" by § 15.5(C). Arb. Award at 16. The arbitrator also concluded that this agreement apparently continued into the present because the parties did not discuss § 15.5(C) during contract negotiations in 2012. How the arbitrator could deduce an agreement to not cover criminal defense fees from a complete absence of evidence on that point is unclear, and in this court's view, stretches logic to the point of absurdity.

"[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." Enter. Wheel & Car Corp., 363 U.S. at 597. "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." Id. Here, the arbitrator injected ambiguity into the plain language of § 15.5(C), though there was none, and then effectively bypassed the Agreement, relying instead on the City's insurance policy to determine whether the City had a duty to pay for Nokes's criminal defense costs. The arbitrator thus modified § 15.5(C) to cover civil litigation only, even though there was no support for that conclusion on the face of this provision.

9

The arbitrator also drew unfounded conclusions from a total absence of prior practice and application of § 15.5(C). This goes beyond mere contract interpretation and is, moreover, contrary to § 17.14 of the Agreement. The result is that the arbitration award does not "draw[] its essence," id., from the collective bargaining agreement. The arbitrator thus exceeded his powers.[2]

## Order

Petitioners' motion to vacate the arbitration award is granted. The award is vacated. The court orders a rehearing before an arbitrator agreed to by the parties.

Dated at Burlington, Vermont, this 29th day of April, 2015.

_____
Helen M. Toor
Superior Court Judge

---

[2] Since the court has determined that the arbitrator exceeded his powers with respect to the first point raised by Petitioners, the court need not address Petitioners' remaining two arguments.